UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

| | |
|---|---|
| AMA MULTIMEDIA, LLC, a Nevada limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>ERA TECHNOLOGIES, LTD, a British Virgin Islands company, individually and d/b/a DRTUBER.COM and d/b/a DRTST.COM;<br>IGOR KOVALCHUCK, individually and d/b/a DRTUBER.COM and d/b/a DRTST.COM;<br>WEBZILLA INC.;<br>WZ COMMUNICATIONS, INC.; and John Does 1-20,<br><br>    Defendants. | Case No.<br>1:15-cv-24289-FAM |

**DEFENDANT ERA TECHNOLOGIES, LTD.'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION[1]**

    In a straightforward attempt to transform the Southern District of Florida into the hub for pornography-related copyright litigation, Plaintiff (a Nevada company operating out of Las Vegas) has brought this action – the fifth copyright lawsuit filed by Plaintiff's counsel in this Court in the last ten months – naming as a defendant ERA Technologies, Ltd. ("ERA"), a foreign company incorporated in the British Virgin Islands. The litigation centers entirely around websites that are managed out of Russia.

    The Court might reasonably wonder why Plaintiff has brought this action – which has no connection to Florida – in this Court. The answer is simple: Plaintiff is attempting – by filing

---

[1] Defendant notes that Plaintiff's counsel represents another group of plaintiffs in the case Hydentra L.P. HLP General Partner, Inc. v. ERA Technologies, Ltd., Case No. 1:15-cv24293-MGC (S.D. Fla.) and that those plaintiffs have filed an almost identical complaint against the same defendants in this Court. An almost identical Motion to Dismiss for Lack of Personal Jurisdiction is being filed in that case as well.

litigations in a far-flung forum – to force defendants to settle frivolous lawsuits, rather than having to defend such actions in far-away jurisdictions.  In short, Plaintiff has found that such litigation is profitable – certainly more profitable than attempting to sell memberships to its website at $10 a month.  These lawsuits (and others filed by the Plaintiff around the country) are the work of a "copyright troll," plain and simple.[2]

And, unless this Court wishes to see its resources "gobbled up" adjudicating disputes between purely foreign plaintiffs and defendants, fighting over pornographic postings on various websites, it should send the troll back under its bridge where it belongs.[3]  Thankfully, the United States Constitution and the requirements of due process provide this Court with the opportunity to do just that.  Accordingly, pursuant to Fed. R. Civ. P. 12(b)(2), ERA moves for the dismissal of the Complaint filed by Plaintiff AMA Multimedia LLC.  In further support of its Motion, ERA states as follows.

## FACTS RELEVANT TO PERSONAL JURISDICTION

Plaintiff is a Nevada limited liability company with its principles place of business in Las Vegas, Nevada.  *Complaint*, ¶ 1.  Plaintiff allegedly owns and operates a number of adult entertainment websites and is the owner of certain copyrights and trademarks on the materials displayed at those websites.  *Complaint,* ¶¶ 17-19.  In its complaint, Plaintiff alleges that its intellectual property has been infringed as a result of materials which allegedly were posted at

---

[2] Wikipedia defines a "copyright troll" as a party "that enforces copyrights it owns for the purposes of making money through litigation, in a manner considered unduly aggressive or opportunistic, generally without producing or licensing the works it owns for paid distribution."  Similar definitions of "copyright troll" have been recognized by courts around the country, who have used the term in their written opinions.  *See*, *e.g.*, *Malibu Media, LLC v. Doe*, No. 15 CIV. 4369 AKH, 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015) ("Recent empirical studies show that the field of copyright litigation is increasingly being overtaken by 'copyright trolls,' roughly defined as plaintiffs who are more focused on the business of litigation than on selling a product or service or licensing their copyrights to third parties to sell a product or service…. In 2012, judge in the Southern district and across the country began awakening to the danger of copyright trolls, especially in the context of pornography…. The largest copyright trolls were increasingly unscrupulous in abusing the litigation process…" (internal quotes and citations omitted)).  *Third Degree Films v. Does 1-47*, 286 F.R.D. 188, 189 n.1 (D. Mass. 2012) ("A copyright troll is an owner of a valid copyright who brings an infringement action not to be made whole, but rather as a primary or supplemental revenue stream." (citation omitted)); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 691 (7th Cir. 2012) (copyright plaintiff that sought expensive and over-broad discovery gave the appearance of being a "copyright troll").  *See*, *also*, *generally*, James DeBriyn, *Shedding Light on Copyright Trolls: An Analysis of Mass Copyright Litigation in the Age of Statutory Damages*, 18 UCL Ent. L.Rev. 79 (2012); Matthew Sag, *Copyright Trolling, An Empirical Study*, 100 Iowa L.Rev. 1105, 1108 (2015).  Plaintiff has filed at least five almost identical lawsuits around the country since August of 2015.

[3] *See,* Peter Christen Asbjørnsen and Jørgen Moe, <u>The Three Billy Goats Gruff</u> (*De tre bukkene Bruse som skulle gå til seters og gjøre seg fete, Norske Folkeeventyr),* translated by George Webbe Dasent in Popular Tales from the Norse, 2nd edition (London: George Routledge and Sons, n.d.), no. 37, pp. 275-276 ("Now I'm coming to gobble you up,' roared the troll.").

the websites located at Drtuber.com and Drtst.com (the "Websites"). *Complaint*, *passim*. The allegedly infringing materials were posted, if at all, not by ERA or its agents, but rather by users of the Websites. Declaration of Ivan Timshin ["*Timshin Decl.*"], filed herewith, ¶ 24.

DrTuber.com is a "porn tube" websites where users can upload and share their own pornographic videos. *Id.*, ¶ 2. There is no website available at the drtst.com domain name nor has there ever been. *Id.*, ¶ 3.

In its Complaint, Plaintiff improperly attempts to conflate ERA with two other Defendants, Webzilla Inc. and WZ Communications Inc. (the "ISP Defendants") – each of which is alleged to be incorporated in and doing business in Florida. *Complaint*, ¶¶ 4-5. However, ERA does not have any ownership interest the ISP Defendants and the ISP Defendants have no ownership interest in ERA. *Timshin Decl.*, ¶ 4; Declaration of Kostyantyn Bezruchenko ["*Bezruchenko Decl.*"], filed herewith, ¶¶ 3-4. The ISP Defendants have no ownership interest in the Websites. *Timshin Decl.*, ¶ 5; *Bezruchenko Decl.*, ¶ 5. The ISP Defendants do not direct, control or assist in determining the content on the Websites. *Timshin Decl.*, ¶ 6; *Bezruchenko Decl.*, ¶ 6. Indeed, ERA and the ISP Defendants are completely and entirely separate entities; they do not have common ownership, nor do they have common management. *Timshin Decl.*, ¶ 7; *Bezruchenko Decl.*, ¶ 7.

Contrary to the allegations in the Complaint, **the ISP Defendants do not host the Websites**. Webzilla Inc. does not host DrTuber.com or Drtst.com, whether in Florida or California or elsewhere. *Timshin Decl.*, ¶ 8; *Bezruchenko Decl.*, ¶ 8. WZ Communications Inc. does not host DrTuber.com or Drtst.com, whether in Florida or California or elsewhere. *Id.* ERA has no contractual or other direct relationship with either of the ISP Defendants. *Timshin Decl.*, ¶ 9; *Bezruchenko Decl.*, ¶ 9. ERA does not engage, contract for, or purchase any servers in the United States to host the Websites. *Timshin Decl.*, ¶ 10. ERA uses Webzilla **Ltd.**, a hosting company based and incorporated in the **Republic of Cyprus**, for its hosting solutions for the Websites. *Timshin Decl.*, ¶ 11; *Bezruchenko Decl.*, ¶ 10.

ERA derives the vast majority of its revenue from advertising that appears on the DrTuber.com website in one form or another. *Timshin Decl.*, ¶ 12. The vast majority of the advertising that appears on the DrTuber.com website is sold through advertising brokers. *Id.*, ¶ 13. In other words, ERA enters into agreements with advertising brokers, who, in turn, sell the advertising space on the DrTuber.com website to clients around the globe. *Id.* The

overwhelming majority of those brokers are located outside of the United States. *Id.*, ¶ 14. Although it is possible for advertisers to contract to have their ads be targeted to viewers in a particular country, this "geolocation" has always been performed (when it's performed at all) by the advertising brokers, and not ERA. *Id.*, ¶ 15. To be clear, the advertising at issue is *not promoting the DrTuber.com website*, but rather is promoting the websites and/or products of third-parties. *Id.*, ¶ 16. ERA does not select what advertising is displayed on the DrTuber.com website, nor does it decide where in the world that advertising is displayed, instead, those decisions are made by the advertisers who buy advertising. *Id.*

A very small amount of ERA's revenue (less than 1%) is derived from affiliate agreements ERA has with other websites and companies. *Id.*, ¶ 17. If a user clicks on an affiliate link on the DrTuber.com website, ERA gets a small payment from the website to which the user was directed. *Id.* ERA does **not** charge users a membership fee, does not require users to register or join in order to view photos or videos, and does not sell **any** products to consumers. *Id.*, ¶ 18. ERA does not aim the Websites at any particular country, but rather the DrTuber.com website is aimed at the entire world of internet users. *Id.*, ¶ 19. Only 15% of the visitors to DrTuber.com come from the US, with 10% from Germany, 5.5% from Russia and 5% from France. *Id.*, ¶ 20.

ERA has never had a presence in or significant contacts with the United States. ERA does not have (and has never had) any employees in the United States. ERA does not have (and has never had) a bank account in the United States. ERA does not own or lease (and has never owned or leased) real estate in the United States. ERA does not pay (and has never paid) taxes in the United States. ERA does not have (and has never had) an agent for the service of process in the United States. ERA does not have (and has never had) a telephone number in the United States. *Id.*, ¶ 21.

ERA is managed entirely out of Russia. *Id.*, ¶ 22.

Although ERA does use the "RTA" label on the DrTuber.com website, the use of this label does not indicate any relationship with the United States, whether contractual or otherwise. As the RTA's website explains the purpose of the label, "The RTA Label is free to use, voluntary, and universally available to any website that wishes to clearly and effectively label itself as being inappropriate for viewing by minors." *See* rtalabel.org, accessed April 11, 2016.

4

# ARGUMENT

## I.     Legal Standard

"A court must dismiss an action against a defendant over which it has no personal jurisdiction." *H.E.R.O., Inc. v. Self*, 2012 U.S. Dist. LEXIS 69044, *4 (S.D. Fla. May 17, 2012) (quoting *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323-24 (M.D. Fla. 2011)). "To withstand a motion to dismiss, the plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendant's person." *Id.* (citing *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010)).

If the plaintiff meets its pleading burden, the defendant can challenge the plaintiff's allegations through affidavits or other competent evidence. *H.E.R.O., Inc. v. Self*, at *4. "Once the defendant has presented sufficient evidence, 'the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.'" *Las Vegas Prof'l Football L.P. v. Shade*, 2010 U.S. Dist. LEXIS 50738, 2-3 (S.D. Fla. May 17, 2010) (citations omitted). "The plaintiff must do more than merely reiterate the factual allegations in the complaint." *H.E.R.O., Inc.*, at *4. "It goes without saying that, where the defendant challenges the court's exercise of personal jurisdiction, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present." *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009).

## II.    The Court Lacks Personal Jurisdiction Over ERA Technologies, Ltd.

Plaintiff alleges that ERA is subject to personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2).[4] *Complaint,* ¶ 13. Rule 4(k)(2) "allows a federal district court to exercise personal jurisdiction over a foreign defendant when: (1) the claim at issue arises under federal law, and (2) exercising jurisdiction is consistent with the Constitution and laws of the United States." *Schulman v. Institute for Shipboard Education,* 2015 U.S. App. LEXIS 14438 (11th Cir. 2015) (citations omitted). In the present case, it is undisputed that Plaintiff's claims arise under federal law,[5] leaving the only inquiry under 4(k)(2) whether or not this Court's exercise of personal

---

[4] Oddly, Plaintiff also alleges that jurisdiction is proper under 28 U.S. C. § 1391 and 28 U.S.C. § 1400(a). *Complaint,* ¶¶ 13, 16. Section 1391 deals with venue, not jurisdiction, and does not provide a basis for personal jurisdiction. Similarly, Section 1400(a) is also a venue provision which provides that a copyright action may be instituted in any district in which the defendant or its agents are found. Section 1400(a) does not provide a basis for personal jurisdiction and, even if it did, ERA is not located in Florida, nor does it have an agent located there other than its agent designated to receive DMCA take-down notices.
[5] With the exception of one claim which arises under Florida law.

jurisdiction over ERA is constitutionally permissible. In making this determination, the Court examines two types of personal jurisdiction – general jurisdiction and specific jurisdiction – to see if the requirements of either are met. In the present case, the Plaintiff cannot come even remotely close to proving that either form of personal jurisdiction is appropriate.[6]

A.  ERA is Not Subject to General Jurisdiction in the US

The United States Supreme Court has recently reiterated that an exercise of general jurisdiction over a foreign defendant is permissible only in the most "exceptional" of circumstances. *Daimler AG v. Bauman*, 134 S.Ct. 746, 761, n. 19 (2014). *See, also, Schulman*, *supra*. Indeed, the *Daimler* court discussed at length how, in modern jurisprudence, the entire concept of general jurisdiction has "come to occupy a less dominant place," because of the strict limitations on the exercise of such jurisdiction. *Id.* at 758.

Under *Daimler*, a court may only exercise general or "all-purpose" jurisdiction over a foreign corporation when the foreign corporation's connections with the relevant jurisdiction (here, the United States) are so "constant and pervasive as to render it essentially at home in the forum state." *Id.* at 754 (citations and internal quotation marks omitted). The connections must be so "continuous and systematic as to render the [foreign corporation] ... comparable to a domestic enterprise in that [forum]." *Id.* at 758, n. 9 (citations and internal quotation marks omitted). *See*, *also*, *Carmouche v. Tamborlee Mgmt.*, 789 F.3d 1201, 1205 (11th Cir. 2015) ("A foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business.").

In the present case, Plaintiff makes precious few allegations in support of its assertion of personal jurisdiction, improperly aggregates those allegations over all the named defendants, fails to support (and cannot support) most of its allegations, and, ultimately, fails to prove sufficient contacts by ERA with the United States to support this court's exercise of personal jurisdiction. Specifically, Plaintiff's allegations (against any defendant) in support of its assertions that this Court may exercise jurisdiction over the Defendants are:

1. The ISP Defendants (not ERA) are Florida based companies, *Complaint*, ¶¶ 4-5;
2. The Websites are hosted by the ISP Defendants in the United States, *Id.*, ¶¶ 4-5;

---

[6] This Court has held previously that both a general and specific jurisdiction analysis is appropriate under Rule 4(k)(2). *Jackson v. Grupo Industrial Hotelero, S.A.,* 2008 U.S. Dist. LEXIS 88922, * 23-24 (S.D. Fla 2008).

3. The Defendants registered a DMCA agent with the US Copyright Office and that that registered DMCA agent is Constantin Luchian, who is based in Florida, *Id.*, ¶¶ 4-5, 7;

4. The Defendants contract with United States advertisers, who, in turn, use geotracking to target their advertising to specific states, *Id.*, ¶ 6;

5. The Defendants "by and/or through subsidiaries, contract with Florida based companies and individuals to deliver content for their web properties," *Id.*, ¶ 8;

6. The Defendants target Internet users in the United States and Florida, *Id.*, ¶ 9;

7. The Defendants have utilized the RTA self-labelling service, which was created by a Los Angeles, California based company, *Id.*, ¶ 10; and

8. The Defendants "transact business" within the United States by virtue of operating the Websites, *Id.*, ¶ 11.

As a starting point, Plaintiff's attempt to aggregate the contacts of all of the Defendants is wholly and utterly impermissible. "Each defendant's contacts with the forum state must be assessed individually rather than simply viewing them collectively." *Calder v. Jones*, 465 U.S. 783, 790 (1984). *See*, *also*, *Rush v. Savchuk,* 444 U.S. 320, 331-32 (1980) ("The Minnesota court also attempted to attribute State Farm's contacts to Rush by considering the 'defending parties' together and aggregating their forum contacts in determining whether it had jurisdiction. The result was the assertion of jurisdiction over Rush based solely on the activities of State Farm. Such a result is plainly unconstitutional."); *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 781 (1984) ("Each defendant's contacts with the forum State must be assessed individually."); *Celorio v. Google, Inc.*, 872 F. Supp. 2d 1327 (N.D. Fla. 2012) (same); *Verizon Trademark Servs., LLC v. Producers, Inc.,* 810 F. Supp. 2d 1321, 1324 (M.D. Fla. 2011) ("In assessing personal jurisdiction, each defendant's contacts with the forum state must be weighed individually."); *E-One, Inc. v. R. Cushman & Assocs.,* 2006 U.S. Dist. LEXIS 67617 (M.D. Fla. 2006) ("Each defendant's contacts with the forum State must be assessed individually rather than simply viewing them collectively.").

The first of the alleged contacts with the United States (that the ISP Defendants are based in Florida) is wholly irrelevant to ERA as ERA is not controlled by or owned by the ISP Defendants or vice-versa, nor does ERA have any relationship with the ISP Defendants. *Timshin Decl.*, ¶¶ 4-7; *Bezruchenko Decl.*, ¶¶ 4-7. With respect to the second allegation (that the Websites are hosted by the ISP Defendants), that allegation is quite simply wrong – ERA

7

receives is hosting services from a company incorporated in and based in Cyprus, not the ISP Defendants in Florida. *Timshin Decl.*, ¶¶ 8-11; *Bezruchenko Decl.*, ¶¶ 8-10.

With respect to the remaining six factors (to the extent they actually apply to ERA), none can support a finding of general jurisdiction.

1. *Listing of DMCA Agent*

Even when a foreign corporation has appointed an agent within the relevant jurisdiction, courts have routinely rejected that contact as a sufficient basis for an exercise of personal jurisdiction. *See, e.g., Consolidated Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1293 (11th Cir. 2000) ("Courts of appeals that have addressed this issue have rejected the argument that appointing a registered agent is sufficient to establish general personal jurisdiction over a corporation."); *Chipman, Ltd. v. Thomas B. Jeffery Co.,* 251 U.S. 373, 379 (1920) ("Unless a foreign corporation is engaged in business within the State, it is not brought within the State by the presence of its agents."); *Sofrar, S.A. v. Graham Engineering Corp.*, 35 F. Supp. 2d 919, 921 (S.D. Fla.1999) (no general jurisdiction under Florida's long-arm statute, even though defendants appointed an agent for service of process and were registered to do business in the state).

Instead, Plaintiff asserts that the mere act of listing a DMCA agent with the United States Copyright Office's directory of DMCA agents is a sufficient – or relevant – contact with the United States for jurisdictional purposes.[7] It is neither. *See*, *e.g.*, *LG Display Co., LTD. v. Obayashi Seikou Co., LTD*, 919 F. Supp. 2d 17, 27 (D.D.C. 2013) ("Stated simply, a party's contacts with government agencies do not enter the jurisdictional calculus."); *Freiman v. Lazur*, 925 F. Supp. 14, 24 (D.D.C. 1996) (government contacts doctrine prevented the exercise of personal jurisdiction when the defendant applied to register a copyright with the U.S. Copyright Office in Washington, D.C.); *Mgmt. Insights, Inc. v. CIC Enters., Inc.*, 2001 U.S. Dist. LEXIS 24221 (D. Tex. 2001) ("[W]ere the Court to assume, arguendo, that CIC does have regular and continuous contact with the DOL, the Court finds that the government contacts exception to personal jurisdiction applies to restrict the Court from premising extension of jurisdiction over

---

[7] Ironically, adoption of the Plaintiff's position would be counter to public policy and defeat the *protections* provided to rightsholders under the DMCA. Congress enacted the DMCA to "foster cooperation among copyright holders and service providers in dealing with infringement on the Internet.... These considerations are reflected in Congress' decision to enact a notice and takedown protocol encouraging copyright holders to identify specific infringing material to service providers." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1021-22 (9th Cir. 2013). If a foreign website-operator subjects itself to jurisdiction within the United States simply by virtue of designating a DMCA agent, the website operator will have strong incentive not to do so, thwarting the purposes of the DMCA.

CIC on its contacts with a governmental entity."); *Lamb v. Turbine Designs, Inc.,* 41 F. Supp. 2d 1362, 1365 (N.D. Ga. 1999) ("Rooted in the constitutional right to petition the government and first recognized in the District of Columbia, the 'governmental contacts' principle prevents a court from exercising jurisdiction based solely on a defendant's contact with a federal instrumentality.").

2. *Advertisers, "Geolocation"*

Next, Plaintiff alleges that ERA has contracted with advertisers in the United States (who advertise on the DrTuber.com website, not the other way around) and that such contacts justify an exercise of general personal jurisdiction. Preliminarily, Plaintiff is wrong about how advertisers come to advertise on the DrTuber.com website: for the most part, ERA enters into agreements with advertising brokers, the vast majority of whom are located outside the United States, and those brokers sell advertising space to clients around the globe. *Timshin Decl.*, ¶¶ 13-14. To the extent that ERA has, over the years, entered into occasional agreements with advertising brokers located in the United States, such minimal contacts cannot support a finding of general jurisdiction. *See, e.g. Frasier v. Smith*, 594 F.3d 842, 847, 850 (11th Cir. 2010) ("A defendant does not confer general jurisdiction on the courts of Florida by occasionally soliciting business there." "When a defendant's contacts with the United States are confined to intermittent purchases, limited self-promotion, and a few narrow relationships with American businesses, the exercise of nationwide general jurisdiction would 'offend traditional notions of fair play and substantial justice.'" (*citing Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984))); *Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1075 (11th Cir. 1999) (denying jurisdiction under Rule 4(k)(2) and collecting cases in which extensive purchases and sales in a forum were insufficient to establish general jurisdiction); *Tarasewicz v. Royal Caribbean Cruises, Ltd.,* 2015 U.S. Dist. LEXIS 84779 (S.D. Fla. June 30, 2015) ("The fact that a foreign defendant contracts with a Florida resident is not enough to establish personal jurisdiction over the foreign defendant.").

3. *Contract with Florida Based Companies and Individuals*

ERA is not aware of *any* company that it has contracted with that is based in Florida or in the United States. *Timshin Decl.*, ¶ 24. To the extent that it has entered into any such agreements, they would be *de minimis*, be irrelevant to this dispute and not subject ERA to personal jurisdiction in Florida or the United States. *See, e.g. Frasier v. Smith*, 594 F3d 842,

9

847, 850 (11th Cir. 2010) ("A defendant does not confer general jurisdiction on the courts of Florida by occasionally soliciting business there." "When a defendant's contacts with the United States are confined to intermittent purchases, limited self-promotion, and a few narrow relationships with American businesses, the exercise of nationwide general jurisdiction would 'offend traditional notions of fair play and substantial justice.'" (*citing Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984))); *Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1075 (11th Cir. 1999) (denying jurisdiction under Rule 4(k)(2) and collecting cases in which extensive purchases and sales in a forum were insufficient to establish general jurisdiction); *Tarasewicz v. Royal Caribbean Cruises, Ltd.,* 2015 U.S. Dist. LEXIS 84779 (S.D. Fla. June 30, 2015) ("The fact that a foreign defendant contracts with a Florida resident is not enough to establish personal jurisdiction over the foreign defendant.").

4. *Targeting U.S. Internet Users*

Plaintiff next argues that ERA is subject to general personal jurisdiction in the United States based on its unsupported allegation that ERA targets internet users throughout the entire United States, including Florida. *Complaint*, ¶ 11. ERA does no such thing as its Websites are as equally available to users anywhere in the world. ERA, in fact, does not target any users anywhere in the world. *Timshin Decl.*, ¶¶ 19-20.

The traffic records for the DrTuber.com website confirm that ERA does not target United States users. The traffic analytics for the DrTuber.com website show that only 15% of the visitors to the website come from the United States. *Id.*, ¶ 20. Even so, this Court (and others) have rejected the argument that a foreign defendant may be subject to general personal jurisdiction in the United States even when the website garners significant traffic from the United States. *See, e.g., Liberty Media Holdings, LLC v. Letyagin, et al.*, Civil No. 11-62107-CV-Williams (S.D. Fla. Dec. 14, 2011) ("Plaintiff contends that Defendant has 'considerable' web traffic originating from the United States and has presented an exhibit showing that fifteen percent of the visitors to the website are from the United States. Precedent, however, establishes that maintaining a website accessible to users in a jurisdiction does not subject a defendant to be sued there: those users must be directly targeted, such that the defendant can foresee having to defend a lawsuit...." (and cases cited therein)).

The Federal District Court for the Northern District of Iowa was recently faced with a similar flurry of lawsuits alleging facts nearly-identical to those alleged in this action.[8] In each of those actions, the District Court dismissed the complaints after extensively examining both general and specific jurisdiction and finding that an exercise of personal jurisdiction was constitutionally impermissible. *See, e.g., Fraserside IP L.L.C. v. Hammy Media, LTD,* 2012 U.S. Dist. LEXIS 5359 (N.D. Iowa Jan. 17, 2012) (rejecting personal jurisdiction despite allegations that "xHamster's website www.xHamster.com is visited daily by over 1,500,000 internet users worldwide with roughly 20 percent of the site's visitors being from the United States"); *Fraserside IP, L.L.C. v. Youngtek Solutions, Ltd.,* 2013 U.S. Dist. LEXIS 3779 (N.D. Iowa Jan. 10, 2013) (allegations that "17 to 20 percent of visitors to Youngtek's websites are U.S. citizens"); *Fraserside IP L.L.C. v. Netvertising Ltd.,* 2012 U.S. Dist. LEXIS 180949 (N.D. Iowa Dec. 21, 2012) (allegations that "16.7% percent of HardSexTube's website's daily visitors are from the United States"); *Fraserside IP L.L.C. v. Letyagin*, 885 F. Supp. 2d 906 (N.D. Iowa 2012) (allegations that "eighteen percent of SunPorno's website's 2,500,000 daily visitors are from the United States); *Fraserside IP L.L.C. v. Youngtek Solutions Ltd.,* 2012 U.S. Dist. LEXIS 98041 (N.D. Iowa July 16, 2012) (allegations that "the EmpFlix.com website is allegedly visited daily by over 1,500,000 internet users worldwide with approximately 16.9 percent of the site's visitors coming from the United States. The TNAFlix.com website is allegedly visited daily by over 3,000,000 internet users worldwide with approximately 21.5 percent of the site's visitors coming from the United States"). The same result should obtain in the present case (which is presented on near-identical allegations).

     5.     *Transacting Business by Operation of Website*

Plaintiff has also alleged that by simple operation of its Websites, ERA has conducted business within Florida and the United States. *Complaint*, ¶ 13. It is clear however that simply operating a website that is accessible within the United States is not an appropriate basis for exercising personal jurisdiction over ERA. *See, e.g., MPS Entertainment, LLC v. Sorrentino*, 2013 U.S. Dist. LEXIS 141307, *14-15 (S.D. Fla. 2013) ("It appears that Plaintiffs also argue

---

[8] Again, since late 2015, Plaintiff has filed 5 near-identical lawsuits against the owners and operators of adult websites, many of which have named foreign defendants. The motivation for Plaintiff is clear: while its pornpros.com website sells subscriptions for $9.95 a month, it can pressure foreign companies to pay tens of thousands of dollars in settlements to avoid having to defend themselves in foreign courts that lack jurisdiction. Undoubtedly, if Plaintiff is successful in its revenue-generating strategy, the Court can expect Plaintiff's case filings to increase exponentially.

that HAO's operation of a website constitutes sufficient activity with the State of Florida to support the finding of general jurisdiction over HAI.... I disagree" (and numerous cases collected therein)); *Frasier*, 594 F.3d at 847 ("Though the maintenance of a website is, in a sense, a continuous presence everywhere in the world, J&B Tours' Internet contacts with Florida were no in any way substantial." (internal quotations and citations omitted)); *Liberty Media Holdings, LLC v. Letyagin, et al.*, Civil No. 11-62107-CV-Williams (S.D. Fla. Dec. 14, 2011) ("Precedent, however, establishes that maintaining a website accessible to users in a jurisdiction does not subject a defendant to be sued there: those users must be directly targeted, such that the defendant can foresee having to defend a lawsuit...." (and cases cited therein)).

      6.    *RTA Label*

Plaintiff's allegations regarding the RTA label bring into focus the extent to which they are grasping at straws in their attempts to drag ERA into the United States. Although ERA does use the "RTA" label on the DrTuber.com website, the use of this label does not indicate any relationship with the United States, whether contractual or otherwise. The RTA's website explains the purpose of the label: "The RTA Label is free to use, voluntary, and universally available to any website that wishes to clearly and effectively label itself as being inappropriate for viewing by minors." It boggles the mind to think how identifying oneself as an adult-content website using a feature developed by an American organization could subject oneself to personal jurisdiction in the United States as it is not far removed from claiming that any person who uses a lightbulb should be subject to personal jurisdiction here because the lightbulb was invented by Thomas Edison, an American.[9]

      B.    <u>ERA is Not Subject to Specific Jurisdiction in The United States</u>

In order to assert specific personal jurisdiction over ERA in the United States, Plaintiff must demonstrate that an exercise of such jurisdiction comports with the requirements of Due Process under the United States Constitution. The Eleventh Circuit Court of Appeals has outlined a three-stage analysis to determine if an exercise of specific personal jurisdiction comports with the requirements of Due Process: "First, the Defendant must have contacts related to or giving rise to the plaintiff's cause of action. Second, the defendant must, through those

---

[9] Moreover, Plaintiff's position, again, is directly contrary to public policy. Apparently, Plaintiff believes that adult-content websites should be faced with the Hobson's choice of protecting minors from inappropriate content or protecting themselves from frivolous legal arguments.

contacts, have purposely availed itself of forum benefits. Third, the defendant's contacts with the forum must be such that it could reasonably anticipate being haled into court there." *Frasier*, 594 F.3d at 850 (11th Cir. 2010). In the present case, Plaintiff cannot meet (and has not met) any of the three required factors.

 1. *Causation*

"The Court considers, first, whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum. This inquiry focus[es] on the direct causal relationship between the defendant, the forum, and the litigation." *Tobinick v. Novella,* 2015 U.S. Dist. LEXIS 8085, 16-17 (S.D. Fla. Jan. 23, 2015) (internal citations and quotation marks omitted). Of the scant "contacts" with the United States alleged in the Complaint, the only one which could even conceivably be argued as having a direct causal relationship to Plaintiff's claim is Plaintiff's allegation that ERA operates a website which is accessible within the United States and that Plaintiff's works have been infringed on that website.[10] This allegation is insufficient to establish a link between ERA's alleged contact with the United States and Plaintiff's claim because Plaintiff has not taken the next causal step: nowhere does Plaintiff allege that any of its works were infringed by any user within the United States. This omission is fatal.

"Federal copyright law has no extraterritorial effect, and cannot be invoked to secure relief for acts of infringement occurring outside the United States." *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004) (*citing Subafilms, Ltd. v. MGM-Pathe Communications*, 24 F.3d 1088, 1091 (9th Cir. 1994) (en banc). "Thus, it is only where an infringing act occurs in the United States that the infringement is actionable under the federal Copyright Act, giving the federal courts jurisdiction over the action." *Id. See*, *also*, *Foreign Imported Prods. & Publ., Inc. v. Grupo Indus. Hotelero, S.A.,* 2008 U.S. Dist. LEXIS 108705 (S.D. Fla. Oct. 24, 2008) ("Federal copyright law has no extraterritorial effect, and therefore it is only where an infringing act occurs in the United States that the infringement is actionable under the federal Copyright Act, giving the federal courts jurisdiction over the action.… Stated another way, district courts do not have subject matter jurisdiction over infringing acts that took place 'wholly outside' the United States or 'entirely overseas.'").

---

[10] Plaintiff has alleged that the Websites are hosted in the United States, but those allegations are unsupported, unsupportable, and simply false. *Timshin Decl.*, ¶¶ 8-11; *Bezruchenko Decl.*, ¶¶ 8-10.

Accordingly, the only legitimate claim for infringement that Plaintiff could hope to bring would be one in which some portion of the alleged infringement occurred within the United States. Plaintiff fails to allege any (true) contacts by ERA with the United States that resulted in infringing activity occurring within the United States and, as such, there is no causal relationship between ERA's operation of the DrTuber.com website outside the United States and any legitimate claim which might be brought by Plaintiff.

2.   *Purposeful Availment*

Even if the operation of the DrTuber.com website could be seen to give rise to Plaintiff's causes of action, specific jurisdiction could not be exercised over ERA because ERA has not purposefully availed itself of the benefits of the forum. Where an intentional tort such as copyright infringement is alleged, the most appropriate test of whether a defendant has purposefully availed itself of the forum's benefits is the *Calder* effects test. *Tobinick v. Novella*, 2015 U.S. Dist. LEXIS 8085, *21-22 (S.D. Fla. Jan. 23, 2015). *See*, *also*, *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1221 (11th Cir. 2009) ("A different test, however, applies in cases involving intentional torts. In those instances, the applicable test is the 'effects' test utilized in *Calder v. Jones*...."). "The Calder 'effects' test is satisfied where the tort was intentional; aimed at the forum state; and caused harm that the defendant should have anticipated would be suffered in that state." *Tobinick*, *supra* at *22.

In the present case, Plaintiff cannot reasonably argue that ERA, by maintaining a website accessible anywhere in the world, has expressly aimed the Websites at the United States. This precise contention has been repeatedly rejected by Federal Courts both here and elsewhere. *See, e.g., Liberty Media Holdings v. Letyagin*, *supra* ("Plaintiff has not shown that Defendant's conduct can, in line with the Constitution, subject it to jurisdiction in this forum. Plaintiff contends that Defendant has 'considerable' web traffic originating from the United States and has presented an exhibit showing that fifteen percent of the visitors to its website are from the United States.... Precedent, however, establishes that maintaining a website accessible to users in a jurisdiction does not subject a defendant to be sued there; those users must be directly targeted, such that the defendant can foresee having to defend a lawsuit.... Here, Plaintiff has alleged that Defendant's website receives traffic and business from United States customers but has not met its burden of showing that Defendant did anything to target customers from the United States or even that anyone from the United States made a purchase on Defendant's

website."); *Instabook Corp. v. Instapublisher.com*, 469 F. Supp. 2d 1120, 1127 (S.D. Fla. 2006) (finding insufficient contacts in a patent infringement case since, among other reasons, Defendant could not reasonably anticipate being haled into court in Florida based on its operation of interactive websites accessible in Florida and its sales to two Florida residents in the absence of "targeting or solicitation of Florida residents"); *Zamora Radio, LLC v. Last.FM, Ltd.*, 2011 U.S. Dist. LEXIS 69101 (S.D. Fla. 2011) (rejecting jurisdiction over foreign defendants who operate a highly interactive website because none of the activities were specifically aimed at Florida, as opposed to users of the internet world-wide); *Turi v. Stacey,* 2014 U.S. Dist. LEXIS 181228, 40-42 (M.D. Fla. Nov. 25, 2014) ("Courts have stated that the focus of due process analysis should properly remain on traditional jurisdictional principles even where the lawsuit involves Internet activity.… Courts in this District have noted that 'the fact that the website of a company that sells products in Florida can be reached via a link on Defendants' website is too narrow a thread on which to find meaningful 'contact' for the purposes of due process." (internal citations omitted)); *Dynetech Corp. v. Leonard Fitness, Inc.,* 523 F. Supp. 2d 1344, 1347-48 (M.D. Fla. 2007) ("It is undisputed that Defendant Justin Leonard is an Arizona resident and that his corporation, Defendant Leonard Fitness, Inc., is a Nevada corporation.… It is also undisputed that the subject websites were created in, and are operated from, Arizona.… Plaintiffs have not presented any evidence of any purposeful availment of the privilege of conducting activities in Florida. While these websites likely are as accessible from Florida as they are from any other state or anywhere in the world where Internet access is available, such accessibility does not amount to 'purposeful availment' of conducting activities with Florida."). *See*, *also*, *Fraserside IP L.L.C. v. Hammy Media, LTD*, 2012 U.S. Dist. LEXIS 5359, *24-25 (N.D. Iowa Jan. 17, 2012) ("Although I accept as true Fraserside's allegations that xHamster intentionally infringed Fraserside's registered copyrights and trademarks, these allegations, alone, fail to demonstrate that xHamster 'uniquely or expressly aimed' its tortious acts at Iowa.... Although xHamster's website is both commercial and interactive, as an Iowa district court noted in a case presenting similar facts, such a website 'is arguably no more directed at Iowa than at Uzbekistan.'"); *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution."); *Quick Technologies, Inc. v. The Sage Group, PLC*, 313 F.3d 338,

15

345 (5th Cir. 2002) ("Sage Group's operation of a website containing company and product information and links to U.S. subsidiaries also does not provide sufficient grounds for the exercise of personal jurisdiction."); *Toys "R" Us, Inc. V. Step Two, S.A.,* 318 F.3d 446, 452-54 (3d Cir. 2003) ("[T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction.... Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the [jurisdiction]."); *ESAB Group, Inc. v. Centricut, L.L.C.*, 34 F. Supp. 2d 323, 331 (D.S.C. 1999) ("While it is true that anyone, anywhere could access Centricut's home page, including someone in South Carolina, it cannot be inferred from this fact alone that Centricut deliberately directed its efforts toward South Carolina residents."); *Johnson v. Arden*, 614 F.3d 785, 797-98 (8th Cir. 2010) ("[T]he Johnsons have failed to prove that www.BoutiqueKittens.com is uniquely or expressly aimed at Missouri; thus *Calder* provides no support for their Lanham Act claim.").

        3.    *Fair Play and Substantial Justice*

Finally, the Court would still have to determine whether an exercise of personal jurisdiction over ERA comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (*quoting Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 320 (1945)). In making such a determination, the Court weighs the strength of the plaintiff's case on minimum contacts with the forum such that the defendant should reasonably anticipate being haled into court there, with other factors which may still counsel against an exercise of jurisdiction. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258-59 (11th Cir. Fla. 1996).

Given that (1) ERA did not upload any of the allegedly infringing files, (2) ERA has no significant contacts with the United States, and (3) the DrTuber.com website is accessible anywhere in the world where the internet is available, ERA could not have reasonably expected to be haled into Court in the United States and an exercise of personal jurisdiction over ERA in the United States would not comport with fair play or substantial justice.

## **CONCLUSION**

For the reasons state herein, ERA respectfully request that the Complaint be dismissed as against it in accordance with Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

**Respectfully submitted:**

/s/ Brady J. Cobb
Brady J. Cobb, Esquire
Florida Bar No. 031018
COBB EDDY, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone (954) 527-4111
Facsimile (954) 900-5507
bcobb@cobbeddy.com

*Attorney for ERA Technologies, Ltd.*

Dated: April 13, 2016

## **CERTIFICATE OF SERVICE**

**I hereby certify** that a true and correct copy of the foregoing was served electronically via the CM/ECF electronic filing system on all counsel or parties of record on the attached service list this 13th day of April, 2016.

/s/ Brady J. Cobb
Brady J. Cobb

## **SERVICE LIST**

**1:15-cv-24289-FAM**

Aaron Behar, Esquire
Jaclyn Behar, Esquire
BEHAR BEHAR
1840 North Commerce Parkway
Suite One
Weston, Florida 33326
Telephone: (954) 688-7642
Facsimile: (954) 332-9260
AB@BeharBehar.com
JB@BeharBehar.com