UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:15-cv-24289-FAM

AMA MULTIMEDIA, LLC,

        Plaintiffs,

vs.

ERA TECHNOLOGIES, LTD. d/b/a DRTUBER.COM
d/b/a Drtst.com; IGOR KOVALCHUK d/b/a DRTUBER.COM
d/b/a Drtst.com; and John Does 1-20,

        Defendants.

_____/

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS', ERA TECHNOLOGIES, MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION -*AND*- PLAINTIFFS' ALTERNATIVE MOTION FOR JURISDICTIONAL DISCOVERY

COMES NOW, Plaintiff, by and through the undersigned counsel, and hereby files its Memorandum of Law in Opposition to Defendant's, ERA TECHNOLOGIES, LTD.'s ("Defendant" or "ERA Technologies"), Motion to Dismiss for Lack of Personal Jurisdiction (D.E. #28), and alternatively submits its Motion for Jurisdictional Discovery.

The underlying tenant of all jurisdiction jurisprudence is the traditional notion of fair play and substantial justice. Here, ERA Technologies owns and operates DrTuber.com of which all content the U.S. public views comes from/through Florida hosting companies. In addition, ERA Technologies actively sought protections of U.S. federal laws; voluntarily entered into contracts resulting in U.S. companies advertising on its web site, *whose advertisements are specific to Florida and United States citizens*; generates more revenue from its US audience than any other country; accepted money from U.S. companies to advertise on its web site; entered into contracts with U.S. companies to host services of ERA Technologies (cam site); delivered content throughout the U.S. – to over *200 million United States citizens* per year; and accepted certifications from U.S. companies in an attempt to legitimize its website (RTA and WRAAC).

Traditional notions of fair play and substantial justice warrants the only conclusion that specific jurisdiction over ERA Technologies exists in Florida and/or the United States generally.

Nonetheless, ERA Technologies denies such extensive contacts with Florida and the United States and seeks dismissal of the claims levied against them. ERA Technologies has misled to this Court in order to promote its meritless argument.[1]

On November 18, 2015, Plaintiff filed its Complaint. On April 13, 2016, Defendants filed their Motion to Dismiss Plaintiffs' Complaint, contesting personal jurisdiction. Defendants' position is inconsistent with the legal obligations governing personal jurisdiction over a Defendant. This Court has jurisdiction over Defendants' pursuant to pursuant to F.R.C.P. 4(k)(2), Florida specific personal jurisdiction and Florida general personal jurisdiction.

# I. INTRODUCTION

In *Brennan v. Roman Catholic Diocese of Syracuse N.Y., Inc.*, 322 Fed. Appx. 852, 854 (11th Cir. 2009), the Eleventh Circuit set forth the burden of proof as it concerns personal jurisdiction. Plaintiff bears the burden of presenting a prima facie case for personal jurisdiction by submitting sufficient evidence to withstand a directed verdict motion. *Id.* The defendant then must raise, through affidavits, documents or testimony a meritorious challenge to personal jurisdiction. *Id.* If the defendant does so, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents. *Id. If the plaintiff's complaint and the defendant's evidence conflict, the district court must construe all reasonable inferences in the plaintiff's favor. Id.*

A complaint should not be dismissed for lack of personal jurisdiction unless it is "**beyond doubt** that the plaintiff can prove no set of facts that would establish personal jurisdiction over the defendants." *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 838 F. Supp. 572, 575 (M.D. Fla. 1993) (emphasis added).

# II. STATEMENT OF FACTS ESTABLISHING PERSONAL JURISDICTION OVER DEFENDANTS

## A. *IP Address Location - Florida and Dallas*

Defendant contracts with individuals in the U.S. to deliver content for their web properties. Cmplt *¶4-5*. Regardless of Defendant's representations of a Cyprus company,

---

[1] Defendant and its counsel intentionally smear Plaintiff in front of this Court by calling Plaintiff a "copyright troll". Plaintiff doesn't meet the Defendant's own definition of "copyright troll," as AMA distributes it's own content and has significant licensing revenue.

Webzilla, Ltd., the IP addresses delivering DrTuber.com content are owned and registered to WZ Communications, Inc. and Webzilla, Inc., each located in Florida. These IP addresses are *not* assigned to, owned, nor registered to Webzilla, Ltd.

DrTuber.com content is displayed to the public from the IP address 74.117.179.59. (Exhibit 1, Declaration of Bradley Maryman, Par. 24, Exhibit 2, Declaration of Fred S. Lane, Par. 23). This IP address is registered to Webzilla, Inc. and WZ Communications (not Webzilla, LTD) and geo-locates to the Fort Lauderdale/Miami region of Florida for US residents, the corporate address for these entities. (Exhibit 1, Pars. 37-38, Exhibit 2, Par. 24). The IP address 204.155.145.200 (DrTst[2]) is registered to Webzilla, Inc. (not Webzilla, LTD) and geo-locates to the Dallas region of Texas. (Exhibit 1, Pars. 37-38, Exhibit 2, Par. 28). In July 2015, the IP address of drtst.com was 200.155.145.200 (Exhibit 2, Par. 28). Webzilla, Inc. is a company based out of Florida.

The Defendants are hosting through entities based out of Florida (Exhibit 3, Declaration of Jason Tucker, Exhibit 3, Par. 16-20), regardless of the cautiously worded and guarded declarations of ERA and the Internet service provider ("ISP") Defendants. ERA claims to contract with Webzilla Ltd. and not the ISP Defendants. However, Webzilla Ltd cannot be found to do *any* business on the Internet, or whatsoever, other than a corporate filing in Cyprus and in ERA's motion. (Declaration of Jason Tucker, Exhibit 3, Par. 20). None of the IP addresses Plaintiff researched revealed a Webzilla Ltd as owner. In addition to the fact that all IP addresses track to the ISP defendants, there is also evidence that the ISP Defendants and Webzilla Ltd are the same company or part of the same network of companies. (Exhibit 3, Par. 21). Only after the Complaint was filed, as of February 2016, the Webzilla companies added registrations with U.S. Copyright office, specifying all of their "separate" entities. Not only were these registrations filed by the same attorney – but ***they list the exact same email address for the receipt of takedown notices: abuse@webzilla.com[3].*** (Exhibit 3, Par. 19). ***This is carefully***

---

[2] According to Defendant's own admission, the DrTst domain is used as backend technology to help deliver content to users of DrTuber. (D.E. 28-1, Par. 3).
[3] While the Defendants would like us to believe these Webzilla entities are separate, all of the assets are co-mingled. A representative example is the fact that Webzilla.com is owned by Webzilla, Inc, yet is pointed and hosted to an IP address and server owned by Webzilla BV, another one of Webzilla's "separate" entities.

*designed on paper, but a poorly executed in reality shell game the Defendants are hoping to play to intentionally deceive and mislead the Court.*

Defendant's declarations are telling not by what they say, but by what they don't say. Mr. Bezruchenko fails to inform the Court that he is the Director for WZ Communications, Inc., Webzilla, Inc., *and **Webzilla, Ltd.** (*Exhibit 3, Par. 21).  Also noteworthy is ERA's failure to inform the Court exactly where Webzilla Inc. is registered as a corporation, the entity whose servers and IP addresses display DrTuber.com to the public.

This material information was purposely withheld from the Court in an attempt to misrepresent their actual relationships with each other and their relationship with this forum state.  Defendants are jointly playing a game with this Court in an attempt to avoid jurisdiction – all the while conducting business in the United States and Florida.

**B.**    ***Broadcast to United States***

ERA, via DrTuber.com, reaches millions of United States viewers each year.  It's important to understand that over time a website's audience can fluctuate going up and down. Since the Complaint was filed, ERA has intentionally manipulated its traffic through the use of lowering purchased US traffic to try to divest this Court of jurisdiction.  For the 6 months including and leading up to the filing of this Complaint, DrTuber.com received approximately 23% of their visits from U.S. residents.   (Exhibit 3, Par. 23). For the last 12 months, approximately 200m-220m visits were from U.S. residents, by far the largest viewers of DrTuber.com.[4]   (Exhibit 3, Par. 24-25). While we can appreciate that a report from Google analytics was provided to this Court by Defendant, we have no way of knowing the true accuracy of this report.  As an example, the code that counts the traffic may have not loaded to every user on every page.

ERA represents that at the time of this motion, 15% of DrTuber.com viewers are in the United States.  This still represents ERA's top viewing audience and reaches approximately 11,635,470 per month and 139,625,640 per year.  (Exhibit 3, Par. 26).

---

[4] As a matter of perspective, according to Themed Entertainment Association and as published in the Orlando Sentinel, 148,341,000 visitors visited Disney theme parks in 2014. More US visitors go to Drtuber.com per year then attend all Disney Theme Parks combined.
http://www.orlandosentinel.com/travel/attractions/the-daily-disney/os-disney-parks-worldwide-attendance-2015-story.html

The United States has been and remains ERA's number one market for viewers, and therefore advertisers. Noteworthy is that while claiming to broadcast throughout the world, the web site is only offered in English, only specifically references U.S. law, and only specifically mentions U.S. dollars.

## C.	*United States Content Delivery Network*

ERA utilizes a Content Delivery Network (CDN) that is based within the United States. In nontechnical terms a CDN is utilized to optimize and streamline the delivery of content, including and especially video, efficiently within a geographical location. The purpose of the utilization of this network is to optimize and streamline delivery of content to United States viewers, by placing servers geographically close to where the viewers reside so it takes them less time to contact a server to download and stream videos. Many times a CDN will contain many locations throughout the world, on average 10-20 different locations. The CDN utilized by Defendant only contains 2 locations, one in the United States and one in Europe. By electing to use this CDN with only 2 locations, the Defendant was expressly consenting to its content being loaded from these two locations. If Defendant did not want to expand to a second location, then it simply would have elected not to use a CDN. (Exhibit 4, Declaration of Mark Lidikay, Pars. 14-18).

## D.	*Advertising – The US is the top revenue generator in terms of advertising revenue.*

It is well settled that advertising that is reasonably calculated to reach the forum may constitute purposeful availment of the privileges of doing business in the forum. *United States SEC v. Carrillo*, 115 F.3d 1540, 1545 (11th Cir. 1997).

Defendant engages in geo-tracking advertising, which directly targets advertisements based on user location. *Cmplt ¶6.* Ad space is sold for different amounts in different countries. United States advertising is one of the most expensive, if not the most expensive advertising to purchase in this industry. The United States, on average, sells for 300 to 500% more than countries like Russia, Brazil, Spain, Japan, and Poland[5] (Exhibit 3, Pars. 39-40). The fact that US-based advertising is premium and sells for some of the highest rates in the world coupled with the United States being the Defendant's number one country in terms of audience results in the Defendant making more revenue from the US than any other country, by a lot. (Exhibit 3,

---

[5] These countries are in the top 10 of traffic by country, provided in the report by Defendant.

Par. 41). If the US is 15 to 25% of his audience, then that US traffic would be responsible for approximately 25 to 40% of its total revenue[6]. *Id.*

Defendant attempts to avoid jurisdiction related to its advertising in the U.S. to target U.S.-based customers by its use of brokers, "most" of whom they claim are located outside of the U.S. First, Defendant's own admission that "some" brokers are located inside the U.S. (D.E. 28-1, Par. 14) cannot be overlooked, and such U.S-based broker relationships are contractual in nature[7]. Second, Defendants own and operate DrTuber.com and Drtst.com, yet attempt to defer advertising control to their brokers[8]. It also cannot be overlooked the Defendant admits that some of these brokers use geo-location to target users in particular geographic areas (D.E. 28-1, Par. 15), including the U.S. and Florida. Third, while Defendant's representatives maintain that *almost* all (and, not "all") of its advertising is done through brokers, its advertising webpage www.drtuber.com/static/advertise links directly to DrTuber and provides an email address presumably to support@drtuber.com, not a link to an advertising broker.

### E.    *Availment to Protections of U.S. Law and DMCA Agent - Constantin Luchian*

ERA registered with the United States Copyright Office as an Internet Service Provider and listed DrTuber.com as a web site it operates. (Exhibit 3, Par. 13). ERA has also registered a DMCA Agent with the United States Copyright Office, Constantin Luchian, located in Florida, and lists Luchian as DMCA Agent on the web site.[9] (Exhibit 3, Par. 14-15). The registration as an ISP and the listing of a DMCA Agent to receive take down notices is a required step for any entity in seeking protection for copyright infringement liability under the DMCA. There quite simply is no other reason to do so, and shows that Defendant understood that US copyright

---

[6] If traffic from every country sold at the same rate for every country, then the percentage of revenue would be equal to the country breakdown percentage (i.e. 20% US traffic equals 20% total revenue). Because the rates differ by country with the US being at the high end of the spectrum, then the US audience will generate an outsized percentage of the Defendant's revenue.

[7] One such US-based advertising broker is Traffic Haus LLC, located in San Diego, CA (Exhibit 3, Par. 42).

[8] As a matter of law, a principal cannot avoid the consequences of the activities in which its brokers (agents) are engaged. *See* Fla. Stat. 48.193(1) (Any person . . . who personally *or through an agent* does any of the acts enumerated in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state . . . .). Defendant's argument that its brokers established contact with the United States and/or Florida is a red herring.

[9] Constantin Luchian is believe to be an officer of Webzilla, Inc. and WZ Communications, Inc. (*Cmplt ¶7*).

interests would be threatened and exploited.  In *Cybernet Entertainment LLC v. IG Media Inc. et al*, CV-12-01101-PHX-SRB, the United States District Court for the District of Arizona found jurisdiction in a strikingly similar set of facts and contact with the United States.

This lawsuit involves copyright and trademark infringement. As Plaintiffs made clear in their Complaint, notices sent to Florida based DMCA Agent were not honored. *Cmplt ¶59-61*. As such, Defendant's contact with the U.S. and Florida, displayed on Defendant's website, is a contact essential to the litigation and one required by U.S. Federal law in order to avoid liability for copyright infringement.  This demonstrates Defendant's reliance upon the protections of U.S. laws

### F.    *Information on Website*

In addition to the essential contacts above (and the critical fact that the IP address is located in the Florida), Defendant's website illustrates continuous and systematic contacts with the U.S.

1. **WebMaster Web Page**

The WebMaster page of Defendant's website (webmaster.drtuber.com) is set up in order to sell Defendant's affiliate program / model, which is designed to permit third parties to provide links on their websites to Defendant's website, and be compensated for traffic it sends to DrTuber.com, located on servers owned and registered to WZ Communications Inc., and WebZilla Inc. (Exhibit 3, Par. 31). Defendant pays its affiliates on a pre-determined schedule based on the amount of users directed to the DrTuber.com website, and the country from which that user is sent[10]. The WebMaster page demonstrates that all monetary figures are provided in U.S. currency. (*Id*.). Additionally, as reflected on the WebMaster FAQ page, the U.S. is listed as a "Good Country", that pays $1.75 per 1,000 users. (*Id*.). Thus, it is evident that Defendant is pushing its business model onto U.S. based consumers and businesses and intending to profit from it.

2. **Terms of Use - Drtuber.com/static/terms**

---

[10] Proving again that US traffic is some of the most expensive in the world, Defendant pays more for US traffic than most other countries.  (*Id*.).

The Terms of Use on Defendant's website makes repeat specific references to the U.S. and its laws. (Exhibit 3, Par. 30). Specifically, the section of the Terms titled "Intellectual Property" (the basis of this lawsuit), provides that:

> The Content, with the exception of User Submissions and Third Party Content (defined below), including text, graphical images, photographs, music, video, software, scripts and trademarks, service marks and logos contained therein (collectively "Proprietary Materials"), are owned by and/or licensed to us. ***All Proprietary Materials are subject to copyright, trademark and/or other rights under the laws of applicable jurisdictions, including the United States, foreign laws, and international conventions***. We reserve all our rights over our Proprietary Materials.

(*Id*.). The bolded section is key, as it demonstrates that the Defendant relies upon the protections of U.S. laws.

### 3. 2257 Compliance

Despite Defendant's insistence that it is not subject to the jurisdiction of the U.S., they notably go out of their way to advise users of their compliance with U.S. laws on its website. DrTuber.com maintains a 2257 Compliance Page (18 USC §2257) on its website. (Exhibit 3, Par. 29). The page reflects, "[p]ursuant to our Terms of Use, any content that is flagged as inappropriate, illegal, unlawful, harassing, offensive or otherwise objectionable may be removed by us, therefore we ask users to flag any such content by clicking the appropriate link on the content's webpage". Again, 2257 compliance is required by U.S. law. (*Id*.).

### 4. DrTuber Web Cam - drtuberwebcam.com

DrTuber maintains live web cams, where users can watch live adult streaming video. (Exhibit 3, Par. 32). Importantly, as a support telephone number for this function, DrTuber provides a U.S. telephone number (and only links to telephone numbers to "foreign" countries). (*Id*., Par. 33). The Privacy Policy for this function shows many U.S. references and contacts. Specifically, the Privacy Policy references Social Security Numbers, the Children's Online Privacy Act of 1998 (COPA) and the Communications Decency Act (DCA), all U.S. concepts and laws. *Id*. Par. 34. The Privacy Policy provides the address and telephone number of ICF Technology, Inc., a company based in Seattle, Washington, as an address to send mail. (*Id*., Par. 35) ICF Technology, Inc. is listed as the Custodian of Records for DrTuber Cams, consistent with its obligations under Section 2257. (*Id*. Par. 35).

ERA's live web cams are turnkey websites that are actually operated by ICF Technology, Inc. ERA contracts with a US company to provide that company's product to U.S. customers. *Id*. Par. 36.

### 5. "RTA" Labeling

"RTA" (Restricted to Adults) is a self-labeling service. The Association of Sites Advocating Child Protection (ASACP), located in Los Angeles, California, operates RTA. (Exhibit 3, Par. 37). All pages on Defendant's website prominently include an RTA label. *Id*. (as an example only).

### 6. WRAAC

In addition to the RTA label, all pages on DrTuber.com contain a label stating "Brought to you by WRAAC," which stands for Website Rating and Advisory Council. (Exhibit 3, Par. 38). WRAAC is a parental control bar that "helps concerned parents prevent their children from accessing adult-oriented web sites". (*Id*.). Notably, WRAAC is a recognized 503(c) organization, located in **Miami, Florida**. (*Id*.).

## III. FLORIDA'S LONG-ARM STATUTE

A Florida federal district court may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida state court may, so long as the exercise is consistent with federal due process requirements. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 626-27 (11th Cir. 1996). If Florida law and the U.S. Constitution permit, the district court may exercise jurisdiction over the nonresident defendant. *Id*.

To determine whether the district court has personal jurisdiction over nonresident defendants, the Court must undertake a two-part analysis. First, it must determine whether the Florida long-arm statute provides a basis for personal jurisdiction. If so, then it must determine whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy "traditional notions of fair play and substantial justice" under the Due Process Clause of the Fourteenth Amendment. *Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253* (11th Cir.1996) (internal citations omitted).

The Florida Long-Arm statute contains two provisions that confer personal jurisdiction over a non-resident defendant. The first, §48.193(1), confers *specific* jurisdiction if a claim "arises from" a defendant's specific forum-related contacts. Although the term "arising from" may be somewhat broader than the concept of proximate cause, under Florida law there must

nevertheless be some "direct affiliation," "nexus", or "substantial connection" between the cause of action and the activities within the state. *Canadian Steel, Inc. v. HFP Capital Mkts., LLC*, 2012 U.S. Dist. LEXIS 84441 (S.D. Fla. June 19, 2012), *SunTrust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246 (S.D. Fla. 2001). The second, §48.193(2), confers *general* jurisdiction if a defendant's contacts with Florida are sufficiently pervasive. General jurisdiction arises from a non-resident defendant's contacts with the forum that are unrelated to the claim being litigated.

### A.     *Specific Jurisdiction, Fla. Stat. 48.193(1)*

A person submits himself or herself and to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

### 1.     *48.193(1)(a)(1)- Operating, conducting, engaging in, or carrying on a business or business venture in this state*

Defendant is subject to personal jurisdiction pursuant to this statute by having been operating and/or engaging in a business or business venture in this state. As stated herein, the IP address of DrTuber is registered to WZ Communications Inc, and Webzilla Inc, both of which are conducting business and headquartered in Florida; A major portion of Defendant's business is operated by companies located in Florida, including hosting and DMCA services. These business operations are essential to this intellectual property lawsuit, as the lawsuit arises out of these acts.

### 2.     *48.193(1)(a)(2): Committing a Tortious Act Within Florida*

Defendant is subject to specific personal jurisdiction by having committed the tortious act of copyright infringement within the forum state. Copyright infringement is considered an intentional tort for purposes of personal jurisdiction. *Playboy Enterprises, Inc. v. Frena*, 839 F.Supp. 1552, 1559 (M.D. Fla. 1993). "The Court has made clear . . . that "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction. . . . Intentional torts are such acts, and may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008)(internal citations omitted). As stated herein, the IP address of DrTuber is located in Florida; therefore, the content is being infringed from Florida.

In specific personal jurisdiction cases, the Court must apply the three-part due process test, which examines: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully

availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 474-75, 105 S. Ct. 2174, 2182-83, 85 L. Ed. 2d 528 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (1984); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945); *see also Oldfield*, 558 F.3d at 1220-21; *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 630-31 (11th Cir. 1996).

The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, "a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).

### B. *Arise out of or Relate to*

Here, Defendants' contacts with Florida gave rise to the cause of action. The uncontroverted evidence is that the entirety of content the DrTuber.com is broadcast to all Internet viewers through the IP address 74.117.79.59. IP address 74.117.79.59 geolocates to Ft. Lauderdale, Florida *and* is registered to Webzilla, Inc. and WZ Communications – both located in Florida. As the infringements alleged in Plaintiff's complaint is broadcast from Florida companies, ERA tortious actions in unlawfully displaying Plaintiff's copyrighted works are specifically connected to Florida.

Defendant claims that there is no causation, since "the only [contact] which could conceivably be argued as having a direct causal relationship to Plaintiffs' claims is Plaintiff's allegation that ERA operates a website which is accessible within the forum and Plaintiffs' works have been infringed on that website". [D.E. 28, Page 13-14]. However, the uncontroverted evidence is that the content the DrTuber.com is broadcast to its most important (US) Internet viewers through the IP address 74.117.79.59. IP address 74.117.79.59 geolocates to Miami, Florida and is registered to Webzilla, Inc. and WZ Communications – both located in Florida. As the infringements alleged in Plaintiff's complaint is broadcast through Florida companies, ERA's tortious actions in unlawfully displaying Plaintiff's copyrighted works are occurring in Florida. As stated herein, a complaint should not be dismissed for lack of personal jurisdiction unless it is "***beyond doubt*** that the plaintiff can prove no set of facts that would establish

personal jurisdiction over the defendants." *Iverson, Yoakum, Papiano & Hatch*, 838 F. Supp. At 575. Plaintiffs have provided support far beyond this standard.

### C. *Purposeful Availment*

To determine whether a defendant has "purposefully availed" himself of the privilege of conducting activities within the forum state, courts apply the minimum contacts test for purposeful availment, assessing the nonresident defendant's contacts with the forum state and ask whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352-58 (11th Cir. 2013).

In intentional tort cases, courts typically inquire into whether a defendant "purposefully directs his activities" at the forum state, applying an "effects" test that focuses on the forum in which the defendant's actions were felt, whether the actions themselves occurred within the forum. The "effects" requires the defendant to have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Calder v. Jones*, 465 U.S. 783 (1984).

Some federal districts use the analysis from *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), to determine whether to exercise personal jurisdiction over a website Defendant.[11] In order to find jurisdiction based on the existence of a website, some courts have accepted that a "highly transaction-oriented website" may by itself give rise to personal jurisdiction, referring to the "sliding scale" analysis[12]. *Zippo*, 952 F. Supp. at 1124.

### ***Purposeful Availment and Calder Effects Both Support Jurisdiction***

Here, Defendants operate at the far end of the spectrum where they clearly conduct business over the Internet. ERA displays and distributes illegal content through Florida entities.

---

[11] The Eleventh Circuit has not directly adopted *Zippo,* but some Florida district courts have used it as a model in evaluating website Defendants. *Roblor Mktg. Group, Inc. v. Gps Indus.*, 645 F. Supp. 2d 1130, 1139-43 (S.D. Fla. 2009).

[12] One spectrum is where a Defendant clearly does business over the internet, entering into contracts with residents that involve knowing and repeated transmission of computer files. At the other end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the [propriety of the] exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Also, the Defendant sells "premium" memberships, knowingly and repeatedly transferring computer files to residents of Florida and the United States. Additionally, their main source of income is advertising, which they admit is aimed at residents of Florida, through brokers. The site is certainly interactive and commercial in nature. Defendant operates the website to make a profit, as this is not simply an exchange of information for other purposes, such as online bulletin board.

In the instant matter, ERA chose to use Florida companies to broadcast content through DrTuber.com to DrTuber.com viewers. This Florida IP address is the absolute hub to all activities on DrTuber.com displayed to the viewers, and the viewers, in the largest country with the highest advertising rates, are critical to the web site. All videos displayed to these viewers are through this Florida IP address. Defendants simply cannot claim that they were not aware that their web site was and is broadcast through this specific Florida IP address. This web site is a significantly large web site, requiring significant bandwidth for broadcast and the necessity for consistent, efficient, and sufficient streaming capabilities – otherwise viewers would never stay on the site and advertisers would have no value. Owners and operators of such sites simply must know everything about the hosts and delivery network for such sites – including the location of the broadcasting IP address. In addition, advertisements are sent directly to Florida residents – and meant for Florida residents. Therefore, Florida residents are, in fact, specific targets for DrTuber.com.

Defendant argues that web traffic is not enough for purposeful availment, and goes through a multitude of cases where a website accessible to users in a jurisdiction does not subject a Defendant to be sued there. [See generally, D.E. 28 Pgs. 15-16). Accessibility is one contact and should be treated as such, but contrary to what Defendant has stated, Plaintiffs' allegations go beyond accessibility to show purposeful availment. Specifically, as described herein, ERA chose to use a Florida companies and a Florida IP address to broadcast content through DrTuber.com to all DrTuber.com viewers.

Defendant maintains that the Calder Effects test applies and that it does not support jurisdiction, arguing that the harm is not felt in Florida. The harm to the Plaintiffs is felt in the Florida, and no discovery has been taken by Defendant to try to establish otherwise. Since the infringing content IP originates from Florida and is hosted through Florida companies, it cannot be argued that the infringement (intentional act) was not "aimed" at the forum, since the

intentional act of infringement is occurring inside of the forum. This was a decision that Defendant made concerning the origination/storage and hosting of their website and its, and it subjects them to jurisdiction in this state.

**D.** **_Fair Play and Substantial Justice_**

Having determined that Defendants have sufficient minimum contacts with this state, the Court must next determine whether the exercise of personal jurisdiction over them comports with "fair play and substantial justice." _Robinson v. Giarmarco & Bill, P.C.,_ 74 F.3d 253 (11th Cir. 1996), (quoting _International_ Shoe, 326 U.S. at 320). "In so determining, the Court must consider the burden on the defendant in litigating in the forum, the interest of the forum in adjudicating the dispute, plaintiff's interest in obtaining convenient and effective relief, and the interest of the judicial system in efficiently resolving the dispute." _Licciardello,_ 544 F.3d at 1284. [13]

The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, "a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." _Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc._, 593 F.3d 1249, 1267 (11th Cir. 2010).

Defendant has presented absolutely no evidence that litigating in this forum would result in an undue burden. None. Further, it appears that Defendant is well versed and well able to conduct all aspects of their business throughout the world – claiming to manage sites from Russia, contracting with a host in Cyprus (but really in Florida), incorporating in the British Virgin Islands, hiring attorneys in Florida and Boston, utilizing IP addresses in the United States and Florida, registering with the U.S. Copyright Office, and hiring a DMCA Agent in Florida. Well versed in conducting business throughout the world, ERA claiming an undue burden litigation in Florida lacks any credibility. Additionally, since the site (and all of its infringing content) is broadcast through multiple Florida entities, Florida and the Court maintain a great interest in adjudicating the dispute.

**E.** **_General Jurisdiction, Fla. Stat. 48.193(2)_**

---

[13] Defendant cites _Robinson v. Giarmarco & Bill, P.C.,_ 74 F.3d 253, 258-59 (11th Cir. 1996) to support the assertion that in determining fair play and substantial justice, the Court weighs the strength of plaintiff's case on minimum contacts with the forum. The case presents no such rule for determining fair play and substantial justice. Rather, the case affirms the factors presented herein by Plaintiff.

Personal jurisdiction over Defendants is likewise conferred by virtue of Florida Statute 48.193(2), given Defendants' "substantial and not isolated activity" within this state. A district court's exercise of general personal jurisdiction requires a showing of continuous and systematic contacts between the defendant and relevant forum, here Florida. *Fraser v.* Smith, 594 F. 3d 842, 849 (11th Cir. 2010). Defendant makes many arguments as to why Defendant's contacts are insufficient, all of which are unsupported by law or fact.

## Collective Analysis

First, it is important to note that Defendant goes one by one through each contact, arguing why *alone* the contact purportedly would not be enough for general personal jurisdiction. That is not the standard, as a Court is to *aggregate* a foreign Defendant's contacts with the forum. The question is not whether a contact is enough for general personal jurisdiction, but rather if *all* contacts, taken together, show continuous and systematic contact with Florida. *Foreign Imported Prods. & Publ., Inc. v. Grupo Indus. Hotelero, S.A.*, 2008 U.S. Dist. LEXIS 108705, *38-39 (S.D. Fla. Oct. 24, 2008).

## ISP Contracts Are Relevant

Defendant argues that ERA is not controlled by Webzilla **Inc.**[14] or WZ Communications (the ISP defendants) and that ERA has no relationship with such ISP defendants. This is false, as all available records show a connection between the website and these two entities. The relationship between these entities is important as it establishes a contractual connection between ERA and the ISP defendants. These are contracts with Florida companies and carry even more weight given the importance of the services the ISP defendants provide.

## Defendant is Incorrect about its Hosting

Defendant next argues that the actual host of the website is Webzilla, LTD (a Cyprus company) rather than Webzilla, Inc. (a Florida Company). As shown above, this is false as the sites are located in the forum and all available documentation shows Webzilla Inc. and/or WZ Communications host the websites. Again, Plaintiff has gone beyond what is needed at this stage evidencing this fact.

## DMCA Agent

Defendant asserts that pursuant to the "government contacts" theory, a party's contacts with government agencies does not affect jurisdiction. Defendant misunderstands what

---

[14] Defendant argues it does not conduct business with Webzilla *Inc.*, but rather Webzilla *Ltd.*

Plaintiff's point: it is not that Defendant has a contact with the government, it is that the Defendant has a contact (and most likely a contract) with Constantin Luchian (a Florida resident who owns Incorporate Now, Inc., a Florida company and employee of the ISP Companies). This is a contact essential to this litigation, as Plaintiffs set take down notices to this agent, which were ignored, allowing the infringement and Plaintiffs' damages to continue. In addition, registration as an ISP and appointing a DMCA Agent shows intent to seek protection under U.S. law.

### Geolocation

While Defendant attempts to minimize its advertising contracts, what Plaintiffs alleged is correct- Defendant's contract with companies who use geo-tracking to target customers in the United States and Florida. *Cmplt ¶6.* Defendants argue that to the extent that ERA has entered into advertising agreement with brokers located in the United States, these constitute minimal contacts. However, Defendant's representative has admitted that the "vast majority" of its revenue comes from advertising, and therefore contracts with advertising brokers is essential to how Defendant makes the money to run its business. Furthermore, the United States is its number one country, and coupled with the fact that US advertising rates are some of the most expensive in the world, the Defendant received more advertising revenue from the US than any other country by a significant margin. These are not insignificant contracts, especially considering the U.S. market viewing DrTuber.com.

### Contacts Together Support Jurisdiction

Taking all of the facts presented in Section II of this Opposition together, only one conclusion can be reached – Defendant has significant contacts with Florida through IP address locations in Florida provided by Florida companies. These are not only contacts, but are contacts essential to the operation of Defendant's website – without these contacts, there is no available website to it's largest audience and largest revenue generator. It is through these contacts from which the infringement at issue in this Complaint takes place. Moreover, Defendant's DMCA Agent is in Florida, with whom Defendant likely has a contract with to review, process and/or forward DMCA complaints. This contact is also essential to this litigation, as Plaintiff sent take-down notices to this agent, which were not properly handled and the infringing content was not removed. Additionally, on every webpage on DrTuber.com appears "Brought to you by WRAAC". As discussed above, WRAAC is a Florida based 503(c) entity.

## IV. PERSONAL JURISDICTION EXISTS PURSUANT TO F.R.C.P. 4(k)(2)

### A.    *Governing Law*

In cases where a defendant is not amenable to the jurisdiction of any state's courts of general jurisdiction, F.R.C.P. 4(k)(2) permits a federal district court to exercise personal jurisdiction over a foreign defendant when (1) the claim at issue arises under federal law, and (2) exercising jurisdiction is consistent with the Constitution and laws of the U.S. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218 (11th Cir. 2009). Where a federal court invokes Rule 4(k)(2), the applicable forum for the minimum contacts analysis is the U.S. *Schulman v. Inst. for Shipboard Educ.*, 2015 U.S. App. LEXIS 14438 (11th Cir. 2015).[15]

### B.    *Plaintiff Raises Federal Claims*

Plaintiff's claims against Defendants arise pursuant to Federal Law. Jurisdiction consistent with the Constitution and laws of the U.S. is that which comports with due process. *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. Fla. 2000). Considerations of due process require that a non-resident defendant have certain minimum contacts with the forum, so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. The nature and quality of these contacts, however, vary depending upon whether the type of personal jurisdiction being asserted is specific or general. *Id*. Here, Defendants' contacts with the U.S. result in both specific and general national jurisdiction. Notably, the evidence cited above to support jurisdiction in Florida is applicable to the 4(k)(2) analysis that follows. For purposes of brevity, Plaintiffs will only reference its points rather than repeat them in full.

#### 1.  *Specific National Jurisdiction*

***Arise Out Of Or Related To:*** Defendant claims that there is no causation, since "the only [contact] which could conceivably be argued as having a direct causal relationship to Plaintiffs' claims is Plaintiffs allegation that ERA operates a website which is accessible within the United States and Plaintiffs' works have been infringed on that website". ERA is utilizing United States

---

[15] Jurisdiction under 4(k)(2) is appropriate when the Defendants are not amenable to personal jurisdiction in any state. The Eleventh Circuit explained, "[a] district court is not required to analyze the laws of all fifty states to ascertain whether any state court of general jurisdiction has jurisdiction over the defendant; rather, if the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Oldfield*, 557 F. 3d at 1218 n. 22.

companies and United States servers to broadcast infringing content to United States viewers, the largest viewing audience of ERA's website. Plaintiffs have gone beyond the legal standard for this stage of the litigation, going as far as to retain a respected expert at this stage of the litigation concerning this jurisdictional matter.

### *Purposeful Availment and Calder Effects[16] Both Support Jurisdiction*

Here, Defendants operate at the far end of the *Zippo* spectrum where they clearly conduct business over the Internet. Specifically, the Defendant sells "premium" memberships to a US resident, knowingly and repeatedly transferring computer files to residents of United States. Additionally, its main source of income is advertising, which they admit may be aimed at residents of the United States, through brokers. If not at the far end, the site is interactive, and commercial in nature. Defendant operates the website to make a profit, as this is not simply an exchange of information for other purposes, like a bulletin board online for example.

In the instant matter, ERA utilizes a Florida company to broadcast content through DrTuber.com to DrTuber.com viewers, and a Dallas IP address (DrTst) as backend technology to help deliver content to users of DrTuber. (D.E. 28-1, Par. 3). The Florida IP address is a critical hub to activities on DrTuber.com displayed to the viewers of its largest audience (the United States), and these same viewers are critical to the web site and it's revenue. By its own admission, the Dallas IP address helps to deliver *content* to users of DrTuber.com. Videos displayed to the viewers are through a Florida IP address. Defendants simply cannot claim that they were not aware that their web site broadcasts videos and images through these US entities, to their largest market (the United States), where they derive the most amount of revenue. This web site is a significantly large web site, requiring significant bandwidth for broadcast and the

---

[16] To determine whether a defendant has "purposefully availed" himself of the privilege of conducting activities within the forum state, courts apply the minimum contacts test for purposeful availment, assessing the nonresident defendant's contacts with the forum state and ask whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352-58 (11th Cir. 2013). In intentional tort cases, courts typically inquire into whether a defendant "purposefully directs his activities" at the forum state, applying an "effects" test that focuses on the forum in which the defendant's actions were felt, whether the actions themselves occurred within the forum. The "effects" requires the defendant to have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Calder v. Jones*, 465 U.S. 783 (1984).

necessity for consistent, efficient, and sufficient streaming capabilities – otherwise viewers would never stay on the site and advertisers would have no value.

Owners and operators of such sites simply must know everything about the hosts and delivery network for such sites – including the locations of critical technical infrastructure. Further supporting ERA's knowledge of the location of the broadcasting IP addresses is their efforts to hide this information in the ICANN registration. In addition, advertisements are sent directly to United States' residents – and meant for US residents (from US-based advertising brokers). Therefore, US residents are, in fact, specific targets for DrTuber.com.

Defendant argues that web traffic is not enough for purposeful availment, and goes through a multitude of cases where a website accessible to users in a jurisdiction did not subject a Defendant to be sued there. [See generally, D.E. 28 Pgs. 15-16). Accessibility is one contact and should be treated as such, but contrary to what Defendant has stated, Plaintiffs' allegations go far beyond accessibility to show purposeful availment. Specifically, as described herein, ERA chose to use a Florida IP address to broadcast content to its viewers and US-based servers to assist in delivering content to United States viewers.

Defendant maintains that the Calder Effects test applies and that it does not support jurisdiction, arguing that the harm is not felt in the United States. The harm to the Plaintiffs is felt in the United States, and no discovery has been taken by Defendant to try to establish otherwise. Since the infringing content IP originates from Florida and/or Texas and is hosted by Florida companies, it cannot be argued that the infringement (intentional act) was not "aimed" at the forum, since the intentional act of infringement is occurring inside of the forum. This was a decision that Defendant made concerning the hosting and content delivery of their website, and it subjects them to jurisdiction in this forum.

***Reasonable for Suit:*** Given the Defendants' contacts with the United States, it is reasonable to conclude that Defendants anticipated legal issues arising in the United States for which they would be required to participate in legal proceedings. On information and belief, all of the Defendants, both ERA and the ISP Defendants, intentionally tried to set up their respective operations to divest jurisdiction from the United States' courts because they well understood the liability their companies were incurring from the way they were operating their respective

businesses[17].   As discussed herein, when the IP addresses of the infringing site and content delivery system (including the content) is located in the United States, when the sites are hosted in the United States and the DMCA agent located in the United States, when the US is your number one market and you derive more revenue from the US than any other country, it is reasonable that you could be called into the United States for a copyright lawsuit arising from the operations of the website. This is even more evident when you review all of the visible United States connections on Defendant's website.

Defendant argues that since ERA has no significant contacts in the United States, and that DrTuber.com is accessible anywhere in the world, Defendant could not expect to be haled into Court in the United States. As discussed herein, Defendant has significant contacts in the United States, including the essential facts that the sites IP addresses (including the content delivery system) is in the United States, the site is hosted in the United States by United States companies. Moreover, Plaintiffs dispute that Defendant did not upload the materials, but even if this is not the case, the information (including infringing information) is stored in the United States and delivered to people all over the world through its contacts in the United States.  The Defendant has a U.S.-based copyright agent, which shows that the Defendant understands that US copyright interests are being exploited and threatened.  The Defendant utilizes a U.S.-based CDN, showing intent and anticipation to display content to U.S. viewers.  The Defendant utilizes US-based advertising brokers, in addition to foreign advertising brokers, to exploit and cultivate a U.S. market for a profit.  The Defendant accrues more profit from the US, than any other country, due to market size and premium advertising rates.

### 2.  General National Jurisdiction

Fed. R. Civ. P. 4(k)(2) permits a court to *aggregate* a foreign defendant's nationwide contacts to allow for service of process provided the plaintiff's claims arise under federal law and the exercise of jurisdiction must be consistent with the Constitution and laws of the United

---

[17] All Defendants are intentionally trying to mislead the Court through a shell game where related companies clearly co-mingle assets, while trying to claim that these same entities are separate and unrelated.   The Defendants allege they do not do business with Webzilla *Inc,* a US-based entity, but rather Webzilla *Ltd.,* a Cyprus-based entity.  Plaintiff and its experts have yet to see an IP address or host registered as Webzilla *Ltd.* through any research.  Webzilla Ltd. only appeared as a designated agent to the US Copyright Office in a filing after this Complaint was filed.  Previous to that, Webzilla Inc. was listed as the only designated ISP with the USCO. Webzilla BV hosts the Webzilla.com, which is owned by the US entity Webzilla Inc.

States. *Foreign Imported Prods. & Publ., Inc. v. Grupo Indus. Hotelero, S.A.*, 2008 U.S. Dist. LEXIS 108705, *38-39 (S.D. Fla. Oct. 24, 2008). A district court's exercise of general personal jurisdiction requires a showing of continuous and systematic contacts between the defendant and relevant forum, here the United States as a whole. *Fraser*, 594 F. 3d at 849. Defendant makes many arguments as to why Defendant's contacts are insufficient, all of which are unsupported by law or fact.

### Collective Analysis

First, it is important to note that Defendant goes one by one through certain contacts, arguing why alone the contact purportedly would not be enough for general personal jurisdiction. That is not the standard, as a Court is to aggregate a foreign Defendant's nationwide contacts; the question is not whether one contact is enough for general personal jurisdiction, but rather if all contacts, taken together, show continuous and systematic contact with the forum.

### ISP Contracts Are Relevant

Defendant argues that ERA is not controlled by Webzilla or WZ Communications (the ISP defendants) and that ERA has no relationship with such ISP defendants. This is false, as all available records show a connection between the website and these two entities, including hosting and server services. The relationship between these entities is important as it establishes a contractual connection between ERA and the ISP defendants. These are contracts with Florida companies and carry even more weight given the importance of the services the ISP defendants provide.

### Defendant is Incorrect about its Hosting

Defendant next argues that the actual host of the website is Webzilla, LTD (a Cyprus company) rather than Webzilla, Inc. (a Florida Company). As stated previously, this is false as the sites are located in the forum and all available documentation shows Webzilla Inc. and/or WZ Communications host the websites. Again, Plaintiff has gone beyond what is needed at this stage evidencing this fact.

### DMCA Agent

As stated, Defendant maintains a legally required DMCA agent, who is located in the U.S. The DMCA agent is an integral part of Plaintiffs' lawsuit, whereby Defendant failed to comply with Plaintiff's DMCA take-down notices, thus giving rise to this claim. This is not a government contacts by any means.

### Geolocation

Simply stated, Defendant entered into important revenue generating contracts with advertisers located in the U.S. Without these advertisers, Defendant would not earn the revenue that it enjoys. These important contracts certainly constitute minimal contacts and cannot reasonably be characterized as de minimus, particularly given their financial importance. Additionally, the US represents the number one revenue source for the Defendant given that it contains its largest audience, and commands a premium advertising rate.

### Targeting is Only One Factor

Defendant argues that 15% of visitors[18] to its website from the United States does not show targeting of US users. To do this, Defendants cite a string of cases from the Northern District of Iowa court, rejecting jurisdiction based on web traffic from a forum. [See Generally D.E. 28, Pages 11-12]. However, while Defendant states that Plaintiffs' allegations are nearly identical, Plaintiffs' allegations go beyond mere traffic. As stated herein, a Court is to aggregate all relevant contacts. Plaintiffs have never stated that web traffic alone is enough to support jurisdiction, but IP location, hosting, contacts on its websites and contracts with advertisers, as a whole, support jurisdiction.

### Labeling Contacts

Defendant argues that the "RTA" label doesn't indicate any relationship with the United States, and that it would be illogical that using a feature developed by an American organization could subject oneself to personal jurisdiction. Again, Plaintiffs are not arguing that this fact *alone* subjects Defendant to personal jurisdiction, but all contacts taken together do. It cannot be overlooked that Defendant makes multiple references on its website to United States law and United States' safeguards, including safeguards preventing adult oriented content from being distributed to minors. This is just another example of Defendant's contacts showing Defendant foresaw potential litigation in the United States.

### Contacts Together Support Jurisdiction

---

[18] Our research, stated previously, shows that the website traffic fluctuates and 15% would be the absolute lowest composition of US traffic based upon Defendant's use of their time frame to run the report.  For the 6 months leading up to the case, US traffic was ~22%, and at certain time frames, US traffic was as high as 26%.  In all instances, U.S. is the number one viewing audience of DrTuber.com

Taking all of the facts presented in Section II of this Opposition together, only one conclusion can be reached – Defendant has significant contacts with the United States. IP address location, hosting location and DMCA services are all in Florida and/or provided by Florida companies. Additionally, references on Defendant's website shows that Defendant concerns itself with U.S.C. 2257, COPA and the CDA, operates support for its Web-Cam services through a U.S company and U.S. telephone number and contains labels from United States companies prevalent on all web pages. Defendant posts certain labels/badges on its site from U.S. companies in order to give the site credibility. The United States makes up the largest portion of viewers of DrTuber.com and generates the largest portion of ERA's advertising revenue.

## V.  PLAINTIFF'S ALTERNATIVE MOTION FOR JURISDICTIONAL DISCOVERY

In the event this Court is concerned with its jurisdiction over Defendants or is inclined to grant their Motion to Dismiss, Plaintiff requests this Court enter a brief stay in order to permit Plaintiff to conduct limited discovery of information directly affecting the jurisdictional inquiry, which information is in Defendants' exclusive control. If granted, Plaintiff would conduct the following discovery, among other things: (1) the relationship between Webzilla, Inc., Webzilla LTD, Incorporate Now, Inc. and WZ Communications, Inc.; (2) Defendant's contracts with advertisers and advertising brokers, which are only available to the Defendant; (3) discovery related to Defendant's admission that "some" advertisers are U.S. companies; and (4) the deposition of Defendant's 30(b)(6) corporate to establish, among other things, its privacy policy, data collection practices, advertising and similar specific and general connections to the United States or Florida.

A qualified right to jurisdictional discovery exists. Pursuant to Fed. R. Civ. P. 26(b)(1), parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. Discovery is not limited to the merits of a case, as it is available to ascertain the facts bearing on issues such as jurisdiction or venue. *Mother Doe I v. Maktoum*, 632 F. Supp 2d, 1130, 1144 (S.D. Fla. 2007). If the jurisdictional question is genuinely in dispute and the court cannot resolve the issue in the early stages of the litigation, then discovery will certainly be useful and may be essential to the revelation of facts necessary to decide the issue. Jurisdictional discovery is favored where there is a genuine dispute concerning

jurisdictional facts necessary to decide the question of personal jurisdiction. *Bernardele v. Bonorino*, 608 F. Supp. 2d 1313, 1321 (S.D. Fla. 2009). Although the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction. *Majd-Pour v. Georgiana Community Hospital, Inc.*, 724 F.2d 901, 903 (11th Cir. 1984).

As demonstrated here, Plaintiff has set forth sufficient information and documentary proof to, at a minimum, fulfill its prima facie case for personal jurisdiction. As such, Plaintiff has met its burden to demonstrate prima facie jurisdiction, as its complaint contains jurisdictional allegations and a Court may order discovery. *Vorbe v. Morisseau*, 2014 .S. Dist. LEXIS 111247 (S.D. Fla. Aug. 12, 2014).

Additionally, the request for discovery must set forth the specific information sought that would establish personal jurisdiction. *Zamora Radio, LLC v. Last.fm Ltd.*, 2011 U.S. Dist. LEXIS 69101, *38 (S.D. Fla. 2011). Plaintiff undoubtedly does that here, listing in detail some of the discovery it will seek in order to establish jurisdiction over the Defendants. The limited discovery sought here is necessary and relevant for Plaintiff to conclusively establish jurisdiction over Defendants in the United States and in Florida.

## CONCLUSION

For the reasons identified herein, Defendant's Motion to Dismiss should be denied.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of May, 2016 we served the foregoing electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Brady J. Cobb, Esq.

*/s/Aaron Behar, Esq.*
Aaron Behar, Esq.
*/s/Jaclyn Ann Behar, Esq.*
Jaclyn Ann Behar, Esq.