**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cybernet Entertainment LLC, a New York Company, <br><br> Plaintiff, <br><br> vs. <br><br> IG Media Inc. and International Media Ltd. d/b/a YouJizz.com, JizzHut.com, JizzOnline.com, OnlyJizz.com, MoviesGuy.com, JizzBo.com, HotFunHouse.com; Igor Gens; DOES 1-10 inclusive; DOE COMPANIES 1-100 inclusive, <br><br> Defendants. | No. CV 12-01101-PHX-SRB <br><br> **ORDER** |

The Court now rules on Defendant International Media Inc.'s ("International Media") Motion to Dismiss for Lack of Personal Jurisdiction ("MTD") (Doc. 14).

I.  **BACKGROUND**

On May 24, 2012, Plaintiff Cybernet Entertainment, LLC ("Cybernet") filed a Complaint against IG Media Inc. ("IG Media") and International Media doing business as YouJizz.com, JizzHut.com, JizzOnline.com, OnlyJizz.com, MoviesGuy.com, JizzBo.com, and HotFunHouse.com, as well as against Igor Gens for (1) copyright infringement, (2) contributory copyright infringement, (3) vicarious copyright infringement, (4) inducement of copyright infringement, and (5) false designation of origin under the Lanham Act. (*See*

Doc. 1, Compl. ¶¶ 83-544.) On August 6, 2012, International Media moved to dismiss Plaintiff's Complaint based on lack of personal jurisdiction. (*See* MTD at 1-2.)

### A. Parties

Plaintiff Cybernet is a limited liability company "organized under the laws of the State of New York, registered in California, with its principal place of business in San Francisco, California." (Compl. ¶ 1.) Cybernet produces its own motion pictures, is "a global leader in legal adult fetish films," and engages "in the business of producing, distributing, and/or licensing to others, the rights to copy, distribute, transmit and exhibit copyrighted motion pictures and/or other audio visual works." (*Id.* ¶¶ 19-20.) According to Plaintiff, Cybernet has registered a number of its works with the United States Copyright Office, holds over 2,200 copyrights, and "distributes its copyrighted works in various forms," including over the Internet. (*Id.* ¶¶ 21-22, 43.) Cybernet claims that it has gone to great lengths to meticulously comply "with the various laws, rules, and regulations imposed upon production of legitimate adult entertainment," that it "expends significant amounts of time, money and other resources to produce high quality products" and generate brand recognition, and that it "is the producer, distributor, and exclusive licensor of its own motion pictures in the United States." (*Id.* ¶¶ 16, 20.)

Igor Gens is the President of International Media, a Bahamian corporation with a business address of 303 Shirley Street, P.O. Box N-492, Nassau, Bahamas. (*See id.* ¶¶ 2, 4, 44; MTD, Ex. 1, Decl. of Igor Gens ("Gens Decl.") ¶¶ 2, 4.) Plaintiff alleges that both International Media and IG Media are alter egos of Igor Gens; that they do business as and operate the websites YouJizz.com, JizzHut.com, JizzOnline.com, OnlyJizz.com, MoviesGuy.com, JizzBo.com, and HotFunHouse.com; and that they "directly financially benefit from all sales to YouJizzPremium.com." (Compl. ¶¶ 44-46.) Defendants allegedly "compete against Plaintiff in the distribution and sale of adults-only audio-visual works through Internet distribution and divert potential customers from Plaintiff." (*Id.* ¶ 47.)

///

///

- 2 -

### B. Defendant's Websites

The parties dispute how International Media's various websites function. International Media admits that it operates the websites at issue, except for the YouJizz Premium website, a screenshot of which demonstrates that people could purchase a one-day trial plan, a one-month access plan, or a twelve-month access plan for varying costs. (*See* Compl., Ex. 6, YouJizz Premium Pages; Gens Decl. ¶¶ 14, 17.) Defendant International Media (hereinafter "Defendant" or "International Media") claims that the YouJizz Premium website is no longer operational and that when it was operational, it was owned and operated by a third party located outside the United States, which "handled all billing for the site and received all revenue." (Gens Decl. ¶ 17.) Defendant claims that the websites it operates "are open and free of charge to anyone accessing the Internet over the age of 18" and that individuals who "upload videos or contents to the websites . . . are not compensated by International Media and do not enter into any form of contractual agreement with International Media." (*Id.* ¶¶ 14-15.)

Plaintiff alleges that Defendant allows third parties to upload and display Plaintiff's intellectual property on Defendant's websites, which Defendant's other websites then "draw upon . . . to create unique pages to display the [uploaded] video[s]," meaning not all the websites are "displaying user uploaded content – rather those websites are sourcing their videos independently of the user." (*See* Compl. ¶¶ 55, 58.) According to Plaintiff, Defendant's "websites are truly subscription membership web[]sites hiding behind the veneer of a simple user-generated content exchange site," and Defendant generates "significant monthly revenues" through the display and distribution of a vast collection of infringed films. (*Id.* ¶¶ 64, 68.) Plaintiff alleges that Defendant initially does not "allow users to view high quality versions of Plaintiff's films or download Plaintiff's film[s]," but rather presents options to pay to become a "Premium Member," which grants users the ability to view films in high definition and download videos. (*Id.* ¶ 71; *see also id.* ¶¶ 70, 74.) Plaintiff further alleges that Defendant also generates "significant annual revenue" from selling advertisement space. (*Id.* ¶ 69.) According to Plaintiff, "Advertisers purchase ad space on certain pages and

in certain locations on the websites due to the known or estimated Internet traffic that views the particular page or location," and the volume of Internet traffic "is directly attributable to the quality of the content displayed." (*Id.*) Accordingly, Plaintiff alleges, "the quality of Plaintiff's films is directly responsible for the revenue generated by the sale of ad space on Defendants' websites." (*Id.*)

International Media claims that its websites "are open and free of charge to anyone" over eighteen and that visitors to the sites "are not charged a fee to access the sites and do not enter into any form of contractual agreement with International Media." (Gens Decl. ¶ 14.) Defendant avers that it "generates revenue solely through the sale of advertising space on its websites," and that apart from two advertising customers with whom International Media deals with directly, advertisers pay an Internet advertising broker, which then "remits a single monthly check to International Media." (*Id.* ¶ 16.) There is no dispute that the websites are interactive and allow users to upload videos. (*See, e.g.*, Doc. 19, Resp. to Int'l Media Inc.'s Mot. to Dismiss ("Resp.") at 3; Gens Decl. ¶ 15.) Likewise, the parties do not dispute that the websites have "targeted marketing," through which advertisements appear that are tailored to the location of the visitor. (*See* Resp. at 3; Doc. 21, Int'l Media's Reply in Supp. of MTD ("Reply") at 7.) For example, an Arizona resident viewing the site might see third-party advertisements geared toward Arizona residents, while a visitor from Portugal might see third-party advertisements targeted to Portugal. (Resp. at 3; Reply at 7.)

**C.  International Media's Contacts with Arizona and the United States**

Turning to International Media's contacts with Arizona, International Media admits that it holds certain Internet domain names that are registered with Domains By Proxy ("DBP"), which is located in Arizona. (*See* Gens Decl. ¶ 11; *see also* Compl. ¶ 7; Compl., Ex. 3.) Defendant acknowledges that these domains "are accessible through the Internet from anywhere in the world, including by individuals in Arizona." (Gens Decl. ¶ 12.) The registration agreement between International Media and DBP contains the following provisions pertaining to jurisdiction and the parties involved:

///

- 4 -

> This Agreement is by and between DBP and you, your heirs, assigns, agents, and contractors ("You") . . . .
>
> . . . .
>
> This Agreement shall be governed in all respects by the laws and judicial decisions of Maricopa County, Arizona, excluding its conflicts of laws rules. Except as provided immediately below, You agree that any action relating to or arising out of this Agreement, shall be brought exclusively in the courts of Maricopa County, Arizona. For the adjudication of domain name registration disputes, you agree to submit to the exclusive jurisdiction and venue of the U.S. District Court for the District of Arizona located in Phoenix, Arizona.

(Resp., Ex. 7 at 9-15, DBP Domain Name Proxy Agreement ("DBP Agreement") at 1, 6.)

Regarding International Media's contacts with the United States as a whole, Plaintiff alleges that in addition to several of the website domain names being registered in Arizona, the "JizzHut, HotFunhouse and MoviesGuy domain names are held by [D]efendants using a registrar and privacy protection services located" in Louisiana. (*See* Compl. ¶¶ 7-8; *see also* Resp. at 4 (claiming Jizzonline.com is registered with a Delaware-based company); Compl., Ex. 3; Resp., Ex. 12.) Plaintiff also alleges that International Media uses third-party payment processors, one of which is known as SegPay and is located in Florida. (Compl. ¶¶ 6, 49.) According to Plaintiff, International Media utilizes the "hosting services of Reflected Networks, with data centers in Chicago, IL; New York, NY; and Waltham, MA." (*Id.* ¶ 50.) Defendant admits that it has an agent in Florida "for the very limited purpose of receiving and forwarding Digital Millenium Copyright Act ('DMCA') takedown notices." (Gens Decl. ¶ 13; *see also* Compl. ¶¶ 5, 48.) Defendant also acknowledges that it "has an agreement with an advertising broker who is located in the United States, and two direct advertising customer relationships with customers in the United States." (Gens Decl. ¶ 13.)

## II. LEGAL STANDARDS AND ANALYSIS

### A. Legal Standard

Personal jurisdiction "is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (internal quotation marks and citation omitted; alteration incorporated). The plaintiff bears the burden of establishing that a court has personal jurisdiction over a defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

- 5 -

1  797, 800 (9th Cir. 2004). The plaintiff is "obligated to come forward with facts, by affidavit
2  or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551
3  F.2d 784, 787 (9th Cir. 1977). There is no statutory method for resolving this issue; thus, "the
4  mode of its determination is left to the trial court." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
5  557 F.2d 1280, 1285 (9th Cir. 1977). If a court decides to rule on a motion to dismiss for lack
6  of personal jurisdiction without an evidentiary hearing, a plaintiff must make only a prima
7  facie showing of jurisdictional facts to survive the motion. *Bauman v. DaimlerChrysler
8  Corp.*, 644 F.3d 909, 919 (9th Cir. 2011). The "uncontroverted allegations in [the plaintiff's]
9  complaint must be taken as true, and conflicts between the facts contained in the parties'
10 affidavits must be resolved in [the plaintiff's] favor" for purposes of deciding whether
11 Plaintiff has established a prima facie showing of personal jurisdiction. *Rio Props., Inc. v.
12 Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

13       In its Complaint, Cybernet cites 28 U.S.C. § 1391(b), (c), and (d); 28 U.S.C. §
14 1400(a); Federal Rule of Civil Procedure ("FRCP") 4(k)(2), and the DBP Agreement and
15 registration of websites in Arizona as purported bases for personal jurisdiction. (*See* Compl.
16 ¶¶ 9-10, 13.) Both 28 U.S.C. § 1391 and 28 U.S.C. § 1400(a) concern venue, not personal
17 jurisdiction. *See* 28 U.S.C. § 1391; 28 U.S.C. § 1400(a). In addition, the only two bases for
18 personal jurisdiction that Plaintiff raises in its Response are (1) that Defendant subjected
19 itself to personal jurisdiction in Arizona by agreeing to the forum selection clause in the DBP
20 agreement and (2) that Defendant is subject to personal jurisdiction by virtue of FRCP
21 4(k)(2). (*See* Resp. at 6-14.) Because the Court concludes that Defendant is subject to
22 personal jurisdiction under FRCP 4(k)(2), it finds it unnecessary to address Plaintiff's forum
23 selection clause argument.

24       **B.    Personal Jurisdiction Under Rule 4(k)(2)**

25       Plaintiff contends that Defendant is subject to personal jurisdiction under FRCP
26 4(k)(2), often referred to as the federal long-arm statute. (*See* Resp. at 7-14); *see also Pebble
27 Beach Co. v. Caddy,* 453 F.3d 1151, 1159 (9th Cir. 2006). FRCP 4(k)(2) provides that:
28

- 6 -

> 1  For a claim that arises under federal law, serving a summons or filing a waiver
> 2  of service establishes personal jurisdiction over a defendant if: (A) the
>    defendant is not subject to jurisdiction in any state's courts of general
>    jurisdiction; and (B) exercising jurisdiction is consistent with the United States
> 3  Constitution and laws.

Fed. R. Civ. P. 4(k)(2). Thus, a court may exercise jurisdiction over a defendant where (1) the claim arises under federal law, (2) the defendant is not "subject to the personal jurisdiction of any state court," and (3) the exercise of personal jurisdiction comports with due process. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). Defendant acknowledges that "only the third element . . . is in dispute." (Reply at 15.)

Due process requires that a nonresident defendant have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Data Disc*, 557 F.2d at 1287. "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendant] and the forum state, we consider contacts with the nation as a whole." *Holland*, 485 F.3d at 462; *see also Pebble Beach,* 453 F.3d at 1159 ("The due process analysis is identical . . . , except here the relevant forum is the entire United States.").

Courts recognize two bases for personal jurisdiction within the confines of due process: (1) general jurisdiction, which permits the forum court to exercise jurisdiction over the defendant in all matters; and (2) specific jurisdiction, which arises out of the defendant's contacts with the forum giving rise to the subject litigation. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 415 n.9 (1984); *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301-02 (9th Cir. 1986). Plaintiff does not argue that the Court has general jurisdiction over Defendant, so the Court turns to specific jurisdiction. (*See* Resp. at 8 ("[T]he Court must analyze whether it has specific jurisdiction over Defendant . . . .").)

The Ninth Circuit Court of Appeals has articulated the following three-prong test for establishing specific jurisdiction:

- 7 -

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of satisfying the first two prongs of the test," and "[i]f the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum." *Id.* If the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King*, 471 U.S. at 477).

### 1. Purposeful Direction

Under the first prong of the specific personal jurisdiction test, the plaintiff must establish that the defendant purposefully availed himself or herself of the privilege of conducting activities in the forum or purposefully directed activities toward the forum. *See id.* These two inquires are often equated to "'purposeful availment,' . . . but availment and direction are, in fact, two distinct concepts." *Id.* (citations omitted). An analysis of purposeful availment of privileges of the forum state typically centers on the defendant's actions in the forum state and is usually analyzed in connection with contract disputes. *Id.* An analysis of purposeful direction, on the other hand, is typically used in tort suits and normally centers on actions performed outside the forum that are directed toward the forum. *Id.* at 802-03.

For intentional torts, the Ninth Circuit Court of Appeals applies the *Calder* effects test in examining purposeful direction of a defendant's activities toward a forum. *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) ("Under our precedents, the purposeful direction or availment requirement for specific jurisdiction is analyzed in intentional tort cases under the 'effects' test derived from *Calder* . . . ."); *see also Calder v. Jones*, 465 U.S. 783, 788-90 (1984). Here, Plaintiff has brought claims of copyright infringement and false designation of origin. (*See* Compl. ¶¶ 83-544.) Such claims are properly analyzed under the *Calder* effects test. *See, e.g.*, *Brayton Purcell LLP v. Recordon*

- 8 -

1  & *Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (applying *Calder* effects test to copyright
2  infringement action); *Rio*, 284 F.3d at 1019-20 (applying *Calder* effects test to trademark
3  infringement claims). Purposeful direction under the *Calder* effects test "'requires that the
4  defendant allegedly have 1) committed an intentional act, 2) expressly aimed at the forum
5  state, 3) causing harm that the defendant knows is likely to be suffered in the forum state.'"
6  *Schwarzenegger*, 374 F.3d at 803 (quoting *Dole Food*, 303 F.3d at 1111).

### a. Intentional Act

Plaintiff argues that "Defendant has acted intentionally in permitting uploads, downloads, and then displaying videos that belong to Plaintiff and thus infringe Plaintiff's copyright." (Resp. at 9.) The Court agrees. Intent under the *Calder* effects test is construed as "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Defendant's operation of its websites constitutes an intentional act. *See Brayton Purcell*, 606 F.3d at 1129 ("operating a passive website was an intentional act" (citing *Rio*, 284 F.3d at 1020)); *Datatech Enters. LLC v. FF Magnat Ltd.*, No. C 12-04500 CRB, 2012 WL 4068624, at *2 (N.D. Cal. Sept. 14, 2012) ("The intentional act element is broadly construed, and can be met by the mere operation of a website . . . .").

### b. Express Aiming

Plaintiff argues that "express aiming" at the United States is present in this case as (1) the "primary visitors to Defendant's websites are U.S. residents, with nearly half of the traffic to Onlyjizz.com being from the U.S., 36% from JizzOnline.com and over 27% from YouJizz.com," (2) "Defendant admitted to having an agreement with YouJizzPremium.com [], which has paid members, offers its membership in U.S. dollars and is entirely in the English language," (3) Defendant's websites are interactive, and (4) "Defendant's websites specifically target Arizona and other United States residents with ads designed for the visitor and which take into consideration just where the visitor is located." (*See* Resp. at 9-10.)

In the past courts "have struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the

- 9 -

1 website can be viewed." *See Mavrix Photo, Inc. v. Brand Techs. Inc.*, 647 F.3d 1218, 1229
2 (9th Cir. 2011). The Ninth Circuit Court of Appeals has held that while "maintenance of a
3 passive website alone cannot satisfy the express aiming prong . . . operating even a passive
4 website in conjunction with 'something more'—conduct directly targeting the forum—is
5 sufficient." *Id.* (internal quotation marks and citations omitted). In determining whether a
6 nonresident defendant has done "something more," the Ninth Circuit Court of Appeals has
7 "considered several factors, including the interactivity of the defendant's website, the
8 geographic scope of the defendant's commercial ambitions, and whether the defendant
9 'individually targeted' a plaintiff known to be a forum resident." *Id.* (citations omitted).

10       Defendant argues that "the percentage of visitors from the U.S. to International
11 Media's websites does nothing to establish ***targeting*** of U.S. residents by International
12 Media." (*See* Reply at 5.) However, the Ninth Circuit Court of Appeals has found that the
13 number of visitors to a website from a particular forum is relevant to the express aiming
14 inquiry. *See Mavrix*, 647 F.3d at 1230 (concluding that there was express aiming at
15 California, where, *inter alia*, "[a] substantial number of hits to [defendant's] website came
16 from California residents"); *cf. Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)
17 ("There is no unfairness in calling [a national magazine] to answer for the contents of that
18 publication wherever a substantial number of copies are regularly sold and distributed.").

19       Defendant also argues that "the 'agreement' with the owner of the youjizzpremium
20 site was nothing more than the same arrangement International Media had with any of the
21 advertisers on its sites" and that International Media did not "benefit financially from sales
22 at youjizzpremium," but rather received "the same type of flat advertising fee that
23 International Media's other advertising customers pay." (*See* Reply at 6; *id.*, Ex. 1,
24 Supplemental Decl. of Igor Gens in Supp. of Reply ¶ 7.) According to Defendant,

25     International Media generates revenue solely through the sale of advertising
26     space on its various websites. International Media has two customers that
    advertise on its websites with whom it handles the customer relationship
27     directly, and all other revenues are generated utilizing the services of an
    Internet advertising broker to sell space on its websites. Advertisers that pay
28     to advertise on International Media's websites pay the fees for their advertising

- 10 -

> to the broker, and the broker remits a single monthly check to International Media that combines all advertising revenue regardless of its source.

(Gens Decl. ¶ 16.) What Defendant ignores is that regardless of who actually remits the check, the Ninth Circuit Court of Appeals has found "most salient the fact that [a defendant] use[s] [a plaintiff's] copyrighted photos as part of its exploitation of the [forum] market for its own commercial gain." *See Mavrix*, 647 F.3d at 1229. For purposes of personal jurisdiction, the relevant inquiry is whether the third-party advertisements demonstrate that Defendant exploited the United States market for commercial gain. *See id.* at 1229-30.

In *Mavrix*, the court considered whether it had personal jurisdiction over the defendant where the plaintiff alleged that the defendant infringed the plaintiff's "copyright by posting its copyrighted photos on its website." *Id.* at 1221. The defendant operated a popular interactive website on which visitors could post comments, vote in polls, join a membership club, and "submit news tips and photos of celebrities." *Id.* at 1222. The court noted that Alexa.com, an Internet tracking service, ranked the defendant's website "as number 3,622 out of approximately 180 million websites worldwide based on traffic." *Id.* Here, Plaintiff has submitted evidence that youjizz.com, one of the websites operated by Defendant, is ranked number 225 globally and number 183 in the United States. (*See* Resp., Ex. 1, Alexa Ranking.)[1] According to Alexa.com, 25.8% of visitors to youjizz.com, 29.8% of visitors to jizzonline.com, and 31.4% of visitors to jizzhut.com are from the United States. *See* Alexa, "youjizz.com," Audience Tab, *available at* http://www.alexa.com/siteinfo/youjizz.com (last visited Nov. 20, 2012); Alexa, "jizzonline.com," Audience Tab, *available at* http://www.alexa.com/siteinfo/jizzonline.com (last visited Nov. 20, 2012); Alexa, "jizzhut.com," Audience Tab, *available at* http://www.alexa.com/siteinfo/jizzhut.com (last visited Nov. 20, 2012).

---

1. Currently youjizz.com is ranked number 224 globally and number 196 in the United States. *See* Alexa, "youjizz.com," *available at* http://www.alexa.com/siteinfo/youjizz.com (last visited Nov. 20, 2012).

- 11 -

The *Mavrix* court pointed out that while the defendant's website courted a national audience, the defendant made "money from third-party advertisements for jobs, hotels and vacations in California" and had "agreements with several California businesses," including a California Internet advertising agency and a California wireless provider that hosted a version of the website on its servers. *Id.* Here, Defendant admits that it has a DMCA agent in Florida, a domain name registration agreement with an Arizona company, an "agreement with an advertising broker who is located in the United States, and two direct advertising customer relationships with customers in the United States." (*See* Gens Decl. ¶¶ 11, 13.) The Court must also accept as true Plaintiff's allegations that other domain names are registered with United States based companies and that Defendant utilizes a United States based web hosting service. (*See* Compl. ¶¶ 8, 50; *id.*, Ex. 3.)[2]

While Defendant argues that "the targeted 'banner ads' that are present on International Media's websites" do not support a finding of express aiming, as International Media is not the one doing the advertising, it is not advertising its own websites, and the banner ads are no more targeted at the United States than anywhere else, the *Mavrix* court specifically rejected this argument:

> [Defendant] makes money by selling advertising space on its website to third-party advertisers: the more visitors there are to the site, the more hits that are made on the advertisements; the more hits that are made on the advertisements, the more money that is paid by the advertisers to [defendant]. A substantial number of hits to [defendant's] website came from California residents. One of the ways we know this is that some of the third-party advertisers on [defendant's] website had advertisements directed to Californians. In this context, it is immaterial whether the third-party advertisers or [defendant] targeted California residents. The fact that the

---

2. Defendant claims that Plaintiff is incorrect that it uses a United States based web hosting service. (*See* Reply at 16.) However, Plaintiff has submitted an affidavit averring that it has been documented "that YouJizz.com, Jizzbo.com, Jizzonline.com, Moviesguy.com, Hotfunhouse.com, Jizzhut.com and Onlyjizz.com are hosted in the United States." (*See* Resp., Ex. 14, Decl. of Jason Tucker ("Tucker Decl.") at 2; *see also* Resp., Ex. 5; Tucker Decl. at 3-4.) Under Ninth Circuit law, "uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor" for purposes of deciding whether Plaintiff has established a prima facie showing of personal jurisdiction. *See Rio*, 284 F.3d at 1019.

- 12 -

>     advertisements targeted California residents indicates that [defendant] knows—either actually or constructively—about its California user base, and that it exploits that base for commercial gain by selling space on its website for advertisements.

*See Mavrix*, 647 F.3d at 1230; (*see also* Reply at 7-9.) While Defendant cites cases from other jurisdictions suggesting that banner ads may not be sufficient to establish purposeful direction or targeting, this Court cannot ignore clear Ninth Circuit precedent to the contrary. (*See* Reply at 7-9); *see also IO Group, Inc. v. Jordon*, 708 F. Supp. 2d 989, 992-93, 995, 997 (N.D. Cal. 2010) (concluding there was express aiming and personal jurisdiction in copyright infringement action where defendant owned and operated a website where users could view, copy, upload, and download photographs and moving pictures, stating in background section that "[a]lthough [d]efendant does not charge users . . . , the site is a commercial venture as [d]efendant earned revenue from advertisements that appeared on the site").

The Court concludes that based on Defendant's "website's subject matter, as well as the size and commercial value of the [United States] market, . . . [Defendant] anticipated, desired, and achieved a substantial [United States] viewer base." *See Mavrix*, 647 F.3d at 1230. Defendant has several contacts and agreements with United States entities, including domain registrations, direct advertising customer relationships, an agreement with an advertising broker, and a DMCA agent, all of which suggest that Defendant knew it was cultivating a United States market and desired to do so. (*See, e.g.*, Gens Decl. ¶¶ 11, 13); *see also Mavrix*, 647 F.3d at 1230. In addition, the fact that Defendant has a DMCA agent, that its youjizz.com website explicitly states that "Youjizz.com is not a producer (primary or secondary) of any and all of the content found on the website," and that the website advises viewers of procedures to make complaints of United States copyright infringement, suggests that it was aware that its websites "exploited (and threatened) U.S. copyright interests." *See Datatech*, 2012 WL 4068624, at *3 (granting a preliminary injunction and concluding there was at least a reasonable probability that plaintiff (a pornography producer) could establish personal jurisdiction under FRCP 4(k)(2) where defendant's file-sharing website received "a 'substantial number of hits' from the United States and directly profited from those hits"

- 13 -

and where "several features of the website's operation and Terms of Service demonstrated an awareness that the website exploited (and threatened) U.S. copyright interests"); (*see also* Compl., Ex. 8, YouJizz Pages.) In short, based on Defendant's various contacts with the United States, the substantial amount of traffic from United States residents to its websites, and the fact that Defendant profits–whether directly or indirectly–from advertising that targets United States residents, the Court concludes that Plaintiff has sufficiently established a prima facie case of express aiming at the United States as a whole. While "[n]ot all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every [nation] in which it is accessed," where "a website with [inter]national viewership and scope appeals to, and profits from, an audience in a particular [country], the site's operators can be said to have 'expressly aimed' at that [country]." *See Mavrix*, 647 F.3d at 1231.[3]

### c. Harm in the Forum

Defendant concedes that if Plaintiff can establish it has suffered harm as a result of Defendant's actions, "Plaintiff suffered such harm in the United States." (Reply at 6.) Plaintiff has adequately alleged that it has suffered harm in the United States as a result of

---

3. While Defendant makes much of the fact that "in the 19 years since [FRCP 4(k)(2)] was enacted, the Ninth Circuit has yet to have a case hold the application of the Rule appropriate," the Ninth Circuit has also made clear that the "due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis," with the only difference being that courts consider the defendant's "contacts with the nation as a whole," rather than with a specific state. (*See* Reply at 5); *Holland*, 485 F.3d at 462. In addition, several other courts have found personal jurisdiction under Rule 4(k)(2) proper. *See, e.g.*, *Life Alert Emergency Resp., Inc. v. Lifealert Sec., Inc.*, No. CV 08-3226 AHM (PLAx), 2008 WL 5412431, at *6 (C.D. Cal. Dec. 29, 2008) ("The record establishes that Defendant targeted the United States when it created its web site. It should come as no surprise to it that it may be sued here."); *Tableau Software, Inc. v. Any Aspect KFT*, No. C 06-04639 CRB, 2008 WL 298793, at *3 (N.D. Cal. Feb. 1, 2008) (finding that defendant specifically targeted consumers in the United States where, *inter alia*, it encouraged "American consumers to visit its website"); *Quokka Sports, Inc. v. Cup Int'l Ltd.*, 99 F. Supp. 2d 1105, 1111-12 (N.D. Cal. 1999) (finding personal jurisdiction under FRCP 4(k)(2) and stating it was clear "defendants aimed a significant portion of their commercial effort at the United States" where, *inter alia*, they purposefully went to a United States registrar to get a ".com" domain name and United States companies advertised on defendants' website through banner ads); *but see Pebble Beach*, 453 F.3d at 1159 (finding "of minimal importance" the selection of a ".com" domain name).

- 14 -

1  Defendant's alleged actions. (*See, e.g.*, Compl. ¶¶ 74, 77, 80.) Thus, the Court concludes that
2  Plaintiff has made a prima facie showing of purposeful direction under the *Calder* effects
3  test. *See Mavrix*, 647 F.3d at 1232.

### 2. Arises Out of Defendant's Forum-Related Activities

5  In addition to purposeful direction, Plaintiff must establish that its claims arise out of
6  or relate to Defendant's forum-related activities. *See Schwarzenegger*, 374 F.3d at 802. A
7  claim arises out of a defendant's forum-related activities if the plaintiff "would not have been
8  injured 'but for'" the defendant's conduct directed toward the forum. *See Panavision Int'l,*
9  *L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). The "'arising out of' requirement"
10 should not be read restrictively; rather, the "but for" test merely "preserves the requirement
11 that there be some nexus between the cause of action and the defendant's activities in the
12 forum" and thereby "preserves the essential distinction between general and specific
13 jurisdiction." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *overruled*
14 *on other grounds by* 499 U.S. 585; *see also Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048,
15 1052 n.7 (9th Cir. 1997) ("Although *Shute* has been questioned, the 'but for' test remains
16 viable.").

17 Defendant argues that "Plaintiff's claims are predicated on the allegation that its
18 copyrighted videos are available for viewing on International Media's websites" and that
19 these claims "would still exist if none of the contacts alleged by Plaintiff (U.S. registrar,
20 banner ads, server space) were present in the U.S." (Reply at 9-10.) However, Defendant's
21 registration of its websites was a necessary precursor to any videos being displayed on
22 Defendant's websites, and Plaintiff has shown that several of these registrations occurred in
23 the United States. (*See, e.g.*, Compl., Ex. 3.) But for these United States registrations and the
24 subsequent display of Plaintiff's videos, Plaintiff's claims would not have arisen. *See*
25 *Panavision*, 141 F.3d at 1322.

26 In addition, Plaintiff is a United States company and alleges it was harmed in the
27 United States because Defendant targeted the United States and allowed Plaintiff's
28 copyrighted and trademark-protected works to be viewed on its websites thousands and

- 15 -

sometimes hundreds of thousands of times. (*See, e.g.*, Compl. ¶¶ 1, 14, 20, 22, 83-508). Plaintiff's injury in the United States stems from the substantial amount of traffic to Defendant's websites, including by viewers in the United States. Thus, the Court concludes that Plaintiff's claims arise out of Defendant's United States-related activities. *See Mavrix*, 647 F.3d at 1228 ("[Plaintiff's] claim of copyright infringement arises out of [defendant's] publication of the photos on a website accessible to users in the forum state."); *Rio*, 284 F.3d at 1021 (concluding plaintiff's claims arose out of defendant's forum-related activities where defendant's website injured plaintiff it its principal place of business and where defendant specifically competed with the plaintiff in the forum by targeting forum consumers).

### 3. Reasonableness

Even where the first two requirements of specific personal jurisdiction are met, "in order to satisfy the Due Process Clause, the exercise of personal jurisdiction must be reasonable"; that is, "it must comport with 'fair play and substantial justice.'" *Panavision*, 141 F.3d at 1322 (quoting *Burger King*, 471 U.S. at 476). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477; *see also Schwarzenegger*, 374 F.3d at 802. In determining reasonableness, courts consider seven factors:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Rio*, 284 F.3d at 1021. Here, Defendant has not addressed any of the reasonableness factors or made any argument as to why the exercise of personal jurisdiction would be unreasonable in light of the Court's finding that Plaintiff has satisfied the first two prongs of the specific personal jurisdiction analysis. (*See* Reply at 10.) Except for the fact that it may be burdensome for Defendant to defend itself here as opposed to in the Bahamas (factor 2), the Court finds that the remaining factors are either largely neutral or weigh in favor of Plaintiff

- 16 -

and that Defendant has not met its burden in presenting a compelling case that the exercise of jurisdiction would be unreasonable. *See Burger King*, 471 U.S. at 477.

### III. CONCLUSION

The Court finds that Plaintiff has satisfied its burden of establishing a prima facie case of specific personal jurisdiction over Defendant under FRCP 4(k)(2) and accordingly denies Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

**IT IS ORDERED** denying International Media, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 14).

DATED this 30th day of November, 2012.

_____
Susan R. Bolton
United States District Judge